# Wheeling.

ALEXANDER KEARNES *vs.* WILLIAM H. MONTGOMERY.

January Term, 1870.

1. The contract of a guarantor is collateral and secondary; that of a surety is direct. The guarantor contracts to pay if, by the use of due diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and is so responsible at once if the principal debtor makes default.

2. M. owes a sum of money to K. M. proposes to give K. the bond of C. of like amount and lift his own. M. produces the bond of C. payable to K., which the latter refuses to accept because it is payable to himself, unless M. will endorse it, which he accordingly does, in blank; whereupon it is exchanged for the bond of M. C. was solvent for several years afterwards, but is insolvent at the date of the suit brought by K. against M. K., after suit brought, but before trial, writes over the name of M. that he thereby "became surety," for value received, for C., on the within bond. HELD:

 I. That K. could not write what he did over the name of M., as it was not in accordance with the agreement. That M. was to assume only such liability as he would have done if the bond had been made to him as payee, and been by him transferred to K.

 II. That M. was a guarantor and not liable to the payment of the bond of C., as maker or surety; nor until the use of due diligence against C.

 III. That the facts proved showed that by the use of due diligence against C., K. might have made the money on the bond of C.

This action arose in Greenbrier county, in February, 1867. Kearnes was the plaintiff below, and brought the case here on a writ of supersedeas. All the facts certified in the bill of exceptions, are given in the opinion of Judge Maxwell.

Hon. N. Harrison, judge of the circuit court of Greenbrier, presided on the trial of the case.

*Boggess* for the plaintiff in error.

The defendant relied mainly, in the court below, and will probably rely here, upon the authority of *Nichol's ex'or* v. *Porter*, decided by this court, and reported in 2 W. Va. Rep., p. 13; but even a cursory examination of this case will show an entire want of analogy between it and the present case. In *Nichol's ex'or* v. *Porter*, omitting everything extraneous to the matter under consideration, A, in St. Louis, Missouri, drew a note in writing, whereby he promised to pay to the order of B, a sum of money, six months after date, for value received, negotiable and payable, without defalcation or discount. Afterwards, in Virginia, where the said note was not negotiable, B, *the payee*, endorsed or assigned the said note to C. These are all the material facts; and the declaration against B by C, contained an averment that the maker of the note was insolvent, or that due diligence had been used to make the money off of him, or that due diligence would not have made the money. The court held that B, *the payee*, who transferred the note to C, was an assignor, not an endorser—the paper being not negotiable—and, as such assignor, would only be liable to C upon proof that due diligence had been used, or would have been futile, if used, against the maker. Now, had the note, in this case, been executed to C in the first instance, and then endorsed by B; or, in the case under argument, had the Creigh bond been executed to Montgomery, and had he afterwards endorsed and delivered it to Kearnes, then the ruling in the former case might be authority in the latter, and Montgomery might then, were there no other evidence but the bond and endorsement, claim to be an assignor. But how could he assign to Kearnes a bond, in which he, Montgomery, had no property, and which was already executed and made payable to Kearnes by the obligors? In addition to all this, the proof is clear that Kearnes did not refuse to accept the

bond proffered, because it was not made payable to Montgomery and then assigned by him, but because a person who was relied upon, and expected to be an obligor therein, had not signed it, and that Kearnes did not intend to receive any transfer from Montgomery which would release him from liability, whether due diligence was used or not.

So much for the authority of *Nichols' ex'or* v. *Porter*, and for the claim set up, without one tittle of evidence to show any such understanding or agreement between the parties, and with all the proof directly the other way, that Montgomery, by his blank endorsement upon a bond executed, not to himself, but to another person, became liable to that other person, not as surety, as is insisted upon, or even as guarantor, but as an assignor—a claim that seems to carry with it its own refutation.

The principle is well settled, that the delivery of a blank signature, binds the deliverer for whatever is written over it, consistent with the face of the paper. And this principle applies to a paper not negotiable, as well as to a paper that is. 2 Dougl. R., 514; 29 Eng. C. L. R., 414; 2 T. R., 63; 4 Mass. R., 53; 5 Cranch's R., 142; 8 Leigh, 43; 5 Munf., 381. When Montgomery endorsed the bond in blank he thereby authorized Kearnes to write over his endorsement, either an absolute and direct promise to pay, or a collateral guaranty. 2 Dougl. R.; 29 Eng. C. L. R.; 5 Cranch, supra; 6 Gill, 181; 2 Gill, 340; 11 Mass., 440; 6 Conn., 315; and 19 Wend., 202. In this last case, Cowen, J., says: "When notes have been made payable to a particular person, and endorsed first by a third person, such third person has been held to be an original maker of the note, or a guarantor of payment, according to the nature of the transaction and the understanding of the parties. If such endorser put his name on the back of the note *at the time it was made*, according to a promise to become originally or directly responsible, or *if he participated in the consideration for which the paper was given, he has been adjudged a joint maker.*"

But the opinion of the court, in the case of *Orrick* v. *Col-*

*ston*, 7 Gratt., p. 198, is relied upon as conclusive of everything claimed by the appellant here. In this case, Starbuck and Forman had given a blank note, not negotiable, to Orrick, with a blank endorsement of Colston's. After the action was brought, Orrick wrote above the endorsement, binding Colston as a guarantor of the payment of the money loaned. In delivering the opinion of the court, Judge Daniel, in stating the weight of the New York authorities, uses the following language, altogether applicable to the case at bar: "If, by reason of the note not being negotiable, he (Colston) is not chargeable as endorser, and he made the endorsement under an agreement and with the intent to bind himself in some other form, the payee may write over the blank endorsement such a promise or guaranty as will carry into effect the intention of the parties. 13 Johns. R., 175; 17 Johns. R., 326; 2 Hill's R., 80; 4 Hill's, 420. The reasonable inference which one, about to accept a promissory note filled up as the one before us, and endorsed in blank in the ordinary course of business transactions, would draw, from a mere inspection of the instrument is, that the endorsement was made to give strength and credit to the paper. He would perceive that the person putting his name on the back of the paper, *had not, from the nature of the endorsement*, subjected himself to the liabilities, or entitled himself to the privileges which attach to the *endorser* of paper strictly commercial. And as, of the only other contracts, having reference to the note on the face of the paper, which could be fairly predicated of the blank signature on the back, viz: an absolute and direct promise to pay, or a collateral guaranty, it would *be just as fair to presume the one as the other.* It would, I think, be reasonable to infer further, that the person so endorsing in blank intended to leave it in the power of the payee *to elect in which of the two* aspects he would hold him bound." He then adds: "*I regard the weight of authorities above referred to as in favor of these views.*" And further on: "It was competent for the appellant, in my view of the case, as before stated, to have

charged Colston either as a collateral promissor, or as a *direct and absolute surety.*" And it was further held in this case, that although by the terms of the endorsement, as filled up by Orrick after action brought, Colston would be a collateral promissor, and as such, not bound, because of the alleged want of proper diligence against the maker, that still Orrick would have the right to erase what he had written, and fill up the blank in such a way as to conform to any of the counts in which the plaintiff had a right, upon the state of facts, to recover, (4 Pick. R., 385; 3 Mass. R., 274;) that is, to fill up in such a way as to make Colston a direct promissor. And so entirely and merely formal did the court of appeals regard this change, that it did not deem it necessary to send the case back for it to be made, but reversed the judgment, and entered it for the appellant. 7 Gratt., pp. 198, 199, 200. In the case at bar, no such change is necessary. The blank is already filled up so as to charge Montgomery as a direct and absolute surety as is done in the third count of the amended declaration. So pertinent and conclusive is this case, and of such binding authority here, that it has been quoted from at length, and so completely does it cover the whole ground, that nothing more would be added, but for the presumption raised by the judgment of the court below.

The only difference between the two cases is, that the present one is much stronger for the appellant; for here, Montgomery knew what Colston did not know, viz: the character of the instrument he was endorsing, the amount to be paid, and when it was to be paid. That the instrument is a bond, makes no difference, for the principles settled by *Orrick* v. *Colston*, apply to all instruments not negotiable, and the presence of a seal does not make them less applicable.

It is true, that the author of Robinson's Practice, (vol. 2, p. 136,) in commenting upon this case of *Orrick* v. *Colston*, not confining himself, as he might naturally have been expected to do, to a statement of what the law in Virginia is, undertakes to say what it ought to be, and expresses his

dissent from the correctness of the judgment in that case. To however much respect his views upon this subject, as those of so distinguished a jurist, may be entitled, still they are only his views, and are certainly without that imperative authority here which attaches to decisions of the supreme court of appeals of Virginia, rendered in the year 1850. And even Mr. Robinson, in the paragraph referred to, bases his objections mainly upon the peculiar circumstances of the case, in which it differs from the present one, upon the fact that the note there was blank upon its face, when signed by the maker, and was *afterwards* signed in blank by the endorser, who did not, so far as appears, participate at all in the consideration, and was then, in this condition, delivered to the payee, who *afterwards* filled up both the note and the endorsement.

The decision in *Watson* v. *Hurt*, 6 Gratt., 633, is perfectly consistent with *Orrick* v. *Colston*. Here a promissory note was executed by James M. Hurt to Thomas D. Watson, and endorsed in blank by Branch T. Hurt. The court held that the plaintiff might have held the endorser as an original and direct surety, or as a guarantor; but, inasmuch as in either view his action was barred by the statute of limitations, it was unnecessary, for this reason, to decide in which character, under the circumstances of the case, the endorser should be regarded. The Massachusetts Reports are filled with authorities for the proposition, that where such endorsement as the one under consideration, is made cotemporaneously with the execution and delivery of the note, (as in the present case,) it is not necessary to resort to proof *aliunde*, as may be done where the endorsement is made after the note has been given, and where the endorser had no concern in the original contract, to show what was the true character of his promise, but without any such proof, the holder is allowed to treat the endorser, *at his election*, either as a direct or collateral promissor, without any proof of consideration, or of any actual promise to pay, except what is derived from his signature on the back of the note.

3 Mass. R., 274 and 514; 5 Id., 358; 6 Id., 519; 9 Id., 301; 11 Id., 436; 24 Pick. R., 64; 4 Id., 311; 8 Pick. R., 122; Id., 423; 3 Metc., 275; 5 Id., 203; 8 Id., 504; 7 Cush., 113.

In *Nelson* v. *Dubois*, 13 Johns., 175, the court held "that if a promissory note, not negotiable, is endorsed in blank, the holder may write over the signature of the endorser a guaranty or promise to pay, so as to take the case out of the statute of frauds, any time before, or at the trial;" and that, "where A, at the request of C, sold a horse to B, and B gave a note which C endorsed in blank, having promised to *guaranty* the payment of the money for the horse, this was held to be an original undertaking by C, as surety, and he was as much responsible as if he had signed the note with B." The same doctrine is laid down in *Campbell* v. *Butler*, 14 Johns., 349. In *Violet* v. *Patton*, 5 Cranch, 142, it was decided, that where a blank endorsement is made upon a piece of paper with the intention of giving a person credit, it is really a letter of credit, and the endorser cannot object if a note is written upon the paper, even though this was done after the endorsement. Same doctrine in Dougl. R., 514; 29 Eng. C. L. R., 414. And in the first of these cases last cited, ( *Violet* v. *Patton*), it was held that our statute of frauds, requiring only the promise to be in writing, differs from the English statute, which requires the agreement to be in writing, and that the blank signature was equivalent to a promise, and might be filled up with anything consistent with the face of the paper. And as to the matter of consideration, the same case decides that there need not be a benefit to the promissor, but a benefit to a third person, at his request, is sufficient. But in the case at bar, the want of consideration—that the instrument, as to Montgomery, is a mere *nudum pactum*—could not be objected, even though this decision were not in the way; for here the consideration was not the credit extended to the Creighs, but a benefit to the endorser himself, in the surrender of the joint bond of himself and James N. Montgomery, the appellant "intending at the time, not to release Montgom-

ery from any liability, whether due diligence was used against the Creighs or not."

In the case of *Marberger, &c.*, v. *Pott*, 4 Harris, 1, referred to in 3 Rob. Pr., p. 104, the instrument was sealed, and on the day of its date there was written on the back and signed, but not sealed, an acknowledgement by a person that he was security for the amount, (in every respect parallel with the present case,) the court held that a several action might be sustained against this person, unqualified by the condition of the guaranty. Upon the same point, see *Elkin* v. *Perry*, 6 B. Monroe, 462; *Cassitys* v. *Robinson*, 8 Id., 280; *Craddock* v. *Armor*, 10 Watts, 258; *Kleckner* v. *Klapp*, 2 W. & S., 44.

If these authorities establish Montgomery's liabilities as a surety, the question of due diligence cannot be raised, (and it was upon this point that this action was defeated in the court below); for the proposition will not be controverted, that a surety's liability is commensurate with that of his principal, and the authorities lay down the rule, that "an indulgence granted by a creditor to the principal debtor, will not discharge the sureties of such debtor, unless the creditor has bound himself, in law or equity, not to pursue his remedy against the principal." 2 Rand., 323. That "a mere indulgence given by a creditor to a principal debtor, the creditor not binding himself to suspend his proceedings against the principal for any time, does not, even in equity, discharge the surety." 1 Leigh, 434. And that "a surety will not be discharged by an indulgence granted by the creditor to the principal debtor, unless such indulgence ties up the hands of a creditor from pursuing the debtor at law." 4 Rand., 104.

In the case at bar, Kearnes never tied up his hands so as to preclude himself from proceeding against the principals at any moment he might choose to do so, and Montgomery never notified or required him to take steps against the Creighs. The law is perfectly clear that indulgence given by the creditor to the principal, where there has been no request upon the part of the surety, does not release the

latter, and it is not by any means well settled that a surety is relieved, in all cases, from liability, even where he has requested the creditor to proceed against the principal, and he has failed to do so. See 1 Pars. Contr., 509–514 inclusive, and the authorities there cited in the notes.

The statutory provision, (Code of 1860, chap. 146, p. 633, sec. 4,) restricts the surety who seeks relief in this way, to "a notice in writing," requiring the creditor to sue his principal; and this statute, therefore, only obtains for the relief of a surety, when the creditor has received such notice from him in *writing*, and then fails to use due diligence. In this case, it is nowhere pretended that Montgomery ever required Kearnes, even by an oral notice, much less a written one, to sue the Creighs, the obligors in the bond.

But should this court be of opinion that Montgomery is not bound according to the endorsement as a surety, he will still be liable, if he can be brought within any of the other counts of the declaration; for Kearnes is not limited and restricted to a recovery in precise accordance with the promise written over the signature of Montgomery, placed there since the institution of this suit. *Orrick* v. *Colston*, 7 Gratt., 199, 200. If, then, Montgomery is not an original surety, but a guarantor, instead, how will the case stand? In general terms, it is true, perhaps, that a creditor must first proceed against the principal debtor, and give notice of failure, on his part, to the guarantor, in order to make the latter liable. But even when stated in this general way, the rule is not free from doubt, for upon this point opinions and authorities differ widely. 1. Pars. Contr., 509, 514. But, however the general rule may be, it is certainly true, that the guarantor is not discharged by the mere forbearance of the creditor. *Hunt* v. *United States*, 1 Gallison, 32; 3 Blackf., 93; 2 Pick., 581; 2 New Hamp., 448; 16 Me., 72; 13 Me., 202; 3 S. & M. 647; 2 Metcalf, 176, and other authorities referred to in 1 Pars. Contr., 512–13, note (Y). And where the guaranty is for the payment of a note, and is absolute and unconditional, neither demand or notice is necessary to

charge the guarantor. 7 Greenleaf, 186; 7 Conn., 523; 11 Verm., 444. In this last case, (*Train* v *Jones*, 11 Vt., 444), the rule is thus laid down: "An absolute guaranty that a debt of a third person shall be paid, or that he shall pay it, imposes the same obligation on the guarantor. The creditor is not bound to use due diligence, or give notice of non payment. This is in accordance with the long established rule of the common law. If I undertake for the act of a third person, I am not entitled to notice of his default before suit brought." See, also, 13 Verm., 93; 15 Conn., 406; 14 Conn., 479.

One other remark: Assume that the appellee did not intend to bind himself as a direct promissor, or as an original surety, but simply as an endorser, or collateral guarantor. He must have known at the time that he was misleading Kearnes. He knew very well that the reason Kearnes, at first, refused to accept the proffered bond, was the absence of a promised and expected name upon it; and when, upon his endorsing it, to remove this objection and difficulty, Kearnes accepted it, he knew—he could not fail to know— that in the contemplation of the latter, he was taking the shoes of this absent party, and binding himself just as much as if he had written his name at the foot of the instrument, instead of upon its back. He, therefore, has no ground for equitable relief. Whatever his motive may have been, the case is *res adjudicata*.

For the reasons above assigned, and upon the authorities there referred to, it is submitted that the appellant is entitled to recover from the appellee the debt in the declaration mentioned, and that the judgment of the circuit court is erroneous, and should be reversed.

*Dennis* and *Price* for the defendant in error.

MAXWELL, J. This was an action of assumpsit, to recover from the defendant the sum of 2000 dollars, with interest. The facts certified show that, on the 28th day of January, 1860, the plaintiff held the bond of the defendant and one

J. N. Montgomery, for 2000 dollars; that the defendant, on the day and year aforesaid, proposed to exchange with the plaintiff for the said bond, a bond of 2000 dollars executed by Thomas Creigh and L. S. Creigh to the plaintiff; that the plaintiff refused to accept the said last mentioned bond unless the defendant would endorse the same, inasmuch as it was payable to the plaintiff and not to the defendant; whereupon the said defendant wrote his name upon the back of the said bond, which was then accepted by the plaintiff, who in exchange therefor, delivered to the defendant the said bond of the defendant and J. N. Montgomery; that afterwards, and after the institution of the suit, but before the trial, the plaintiff wrote above the blank endorsement of the defendant, a promise, binding the defendant as surety of the said Thomas Creigh and L. S. Creigh; that the bond, with the endorsement thereon, is as follows:

"On or before the first of March, 1861, with interest from the first of March, 1860, we or either of us bind ourselves, our heirs, &c., to pay Alexander Kearnes, the just and full sum of two thousand dollars, for value received. Witness our hands and seals, this 28th of January, 1860.

"THOMAS CREIGH, [SEAL.]
"LEWIS S. CREIGH, [SEAL.]"

"For value received, I hereby become the surety of Thomas Creigh and Lewis S. Creigh, as obligors in the within bond.      WM. H. MONTGOMERY."

That the debt against the Creighs could have been made by suit in the year 1861, and after the close of the war in 1865, and that the said Creighs have been insolvent since 1866, and that since that time the debt could not have been made off of them by suit. Upon these facts, judgment was rendered for the defendant. The plaintiff in error insists that the judgment is erroneous, because upon the facts proved, the defendant was a surety or maker of the bond in question, and primarily liable for its payment, while it is insisted for the defendant that he was guarantor merely, and only liable for the payment of the bond in case the

money could not be made off of the makers of the paper after it fell due, by the use of due diligence, which he insists was not used before the makers became insolvent.

Whether the defendant is guarantor or maker, depends on the understanding of the parties. If the payee or assignee of paper, not negotiable, endorse his name in blank on the back of it, he is *prima facie* assignor, but if a stranger endorse his name in blank on the back of paper not negotiable, he is *prima facie* guarantor, but this presumption may be rebutted by showing the original understanding of the parties, by showing an express agreement otherwise, or by showing circumstances from which one may be inferred.

The contract of a guarantor is collateral and secondary. It differs in that respect generally, from the contract of a surety which is direct; and in general the guarantor contracts to pay if, by the use of due diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and so is responsible at once if the principal debtor makes default. As the proper diligence was not used against the Creighs, if the defendant is guarantor merely he is not liable for the payment of the debt; while, if he is to be treated as surety, he is liable. It becomes, therefore, necessary to determine whether he is a technical guarantor merely, or a surety.

If the paper signed by the Creighs had been payable to the defendant, then the defendant would have been the assignor thereof, with the rights and liabilities of an assignor, unless some special agreement existed to create a different relation: and as the paper is payable to the plaintiff, the defendant is the guarantor thereof, unless by some special agreement he is liable as maker or surety.

The plaintiff, after suit brought, wrote over the name of the defendant: "For value received, I hereby become the surety of Thomas Creigh and Lewis S. Creigh, as obligors in the within bond." It is upon this contract, so written by the plaintiff, that he claims his right to recover from the

defendant. The plaintiff might write anything over the name of the defendant, consistent with the contract of the defendant, so as to carry it out. He could not write the words which he did write, unless upon special contract between the parties, disclosed by the evidence and surrounding circumstances. The evidence, instead of sustaining and authorizing this special contract as written by the plaintiff, does not even tend to show any such understanding, but on the contrary shows, so far as can be inferred from it, that the defendant was to assume the same situation as to liability, that he would have occupied if the paper had been executed to him as payee and transferred by him to the plaintiff. As the facts proved wholly fail to show a contract on the part of the defendant to be liable as maker or surety, it follows that he is liable only as guarantor.

The facts proved show affirmatively that, by the use of due diligence against the Creighs, the plaintiff might have made the money.

The judgment complained of will, therefore, have to be affirmed, with damages and costs.

BROWN, President.

The facts of this case show that it was the intention of the parties to change obligations, and that the liability of the defendant was thenceforth to be collateral only. Without attempting to reconcile or distinguish the numerous cases decided on the subject, the conclusion I deduce from them, as applicable to this case is, that the endorsement in blank, of the single bill in question, by the defendant, made him collaterally liable, as an assignor would have been after due diligence, and not primarily liable as claimed by the plaintiff.

I think, therefore, that the judgment should be affirmed, with costs and damages to the appellee.

Berkshire, J., concurred in the views of Maxwell, J.

JUDGMENT AFFIRMED.