# Wheeling.

THE STATE FOR USE OF LANHAM *v.* HARMON, *et al.*

Decided May 10, 1879.

1. Under the provisions of the 106th section of chapter 226 of the Acts of the Legislature of the State of West Virginia the following bond was filed with the justice, viz :

"*Know all men by these presents*, That we, George Harmon, principal, and Thomas P. Carpenter and R. N. Lilly, his sureties, are held and firmly bound unto the State of West Virginia in the just and full sum of $300.00, to the payment whereof well and truly to be made we jointly and severally bind ourselves, our heirs and personal representatives, firmly by these presents, as witness our hands and seals this 24th day of May, 1876.

" The condition of the above obligation is such, that whereas John W. Lanham has sued out before Joshua S. Morris, a justice of Putnam county, West Va., a writ of *fieri facias* against the goods and chattels of Elihu Harmon, which writ has been placed in the hands of Jas. M. Harrison, a constable of said county, who has levied the same upon one horse and a yoke of oxen as the property of the said Elihu Harmon, which property is claimed by the said George Harmon: Now, if the said George Harmon will prove in any suit brought upon this bond within three months after the date hereof that he is the owner of said property so levied upon as aforesaid, or if he fail to do so, if he, the said George Harmon, will pay the value thereof, then this obligation is to be null and void, else to remain in full force.

his

"GEORGE ⋈ HARMON.     [Seal.]
mark.

"THOMAS P. CARPENTER.     [Seal.]

"R. N. LILLY.       .     [Seal.]

"Teste: A. J. Loyd, as to Harmon."

Upon this a declaration in *assumpsit* in the name of the State of West Virginia for the benefit of John W. Lanham is filed against

1879
Special Term.

1879
Special Term. .

The State for
use of Lanham
v.
Harmon *et al.*

the obligors in which the said bond is set out at large. The defendants demurred to the declaration, and the plaintiff joined therein, and the court below overruled the demurrer. HELD by the Appellate Court :

1. That the court below erred in overruling the said demurrer to the declaration, if for no other reason, because an action of *assumpsit* is not allowed upon such a bond by the common law, nor by the 10th section of chapter 99 of the Code of West Virginia of 1868, such bond not being such a sealed instrument of writing containing a promise, undertaking or obligation *to pay money* as that upon which said 10th section of said chapter 99 of said Code authorizes an action of *assumpsit* to be brought.

2. In the absence of express legislation in relation to the pleadings in *assumpsit* upon a sealed instrument by which there is a promise, undertaking or obligation *to pay money*, it is advisable, as being more safe and simple, under the present state of the law to bring debt, where it will lie, instead of *assumpsit* under the 10th section of said chapter 99 of the Code of West Virginia.

Writ of error and *supersedeas* to a judgment of the circuit court of Putnam county, rendered on the 2d day of May, 1877, in an action in said court then pending, in which The State of West Virginia for the use of John W. Lanham was plaintiff and George Harmon and others were defendants, granted upon the petition of said plaintiff.

Hon Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts of the case fully appear in the opinion of the Court.

No appearance for plaintiff in error.

*Smith & Knight*, for defendants in error, cited the following authorities :

Acts 1872–3 ch. 42, §§2, 3, 5 ; 2 Leigh 636 3 Rand. 106 ; 11 Gratt. 300.

HAYMOND, JUDGE, delivered the opinion of the Court :

On the 16th day of August, 1876, the plaintiff brought her action of *assumpsit* for the benefit of John W. Lanham against the defendants, laying the damages at

$500.00 in the circuit court of Putnam county. The declaration filed in the cause is as follows:

1879
Special Term.

The State for
use of Lanham
v.
Harmon et al.

" STATE OF WEST VIRGINIA, PUTNAM COUNTY, TO-WIT:
" *In the Circuit Court of said county.*

" The State of West Virginia, for the benefit of John W. Lanham, complains of George Harmon, Thomas P. Carpenter and R. N. Lilly, who have been summoned, &c., of a plea of trespass on the case in *assumpsit,* for that, whereas heretofore, to-wit, on the 24th day of. May, 1876, at the county aforesaid, by their certain writing obligatory, sealed with their seals, an attested copy whereof is to the court now here shown, the date whereof is the day and year aforesaid, the said defendants acknowledged themselves to be held and firmly bound unto the said plaintiff in the sum of $300.00, and to the payment whereof well and truly to be made to the said plaintiff, they bound themselves, and each of them, their and each of their heirs and personal representatives, jointly and severally, firmly by the said writing obligatory, which writing obligatory was and is subject to a certain condition thereunder written, whereby, after reciting to the effect following, to-wit: that whereas John W. Lanham has sued out before J. S. Morris, a justice of Putnam county, W. Va., a writ of *fieri facias* against the goods and chattels of Elihu Harmon, which writ has been placed in the hands of James M. Harrison, a constable of said county, who has levied the same upon one horse and yoke of oxen as the property of the said Elihu Harmon, which property is claimed by the said George Harmon, it was provided that if the said George Harmon would prove in any suit brought on said writing obligatory within three months after the date thereof, that he, the said George Harmon, was the owner of the said property so levied upon as aforesaid, or if he should fail to do so, then that he would pay the value thereof, then the said obligation was to be void, otherwise to remain in full force.

1879
Special Term.

The State for
use of Lanham
v.
Harmon et al.

" And the plaintiff further avers that the said execution mentioned in this said writing obligatory, was for the sum of $100,00, with interest thereon from the 19th day of April, 1873, and costs thereon $1.65, and that the same is wholly unpaid.

" And the plaintiff further avers that at the date of the execution and delivery of the said writing obligatory, the said George Harmon was not the owner of the said horse and yoke of oxen mentioned therein, and that the said horse and yoke of oxen were at that time of the value of $300.00. And the plaintiff avers that by reason of the premises, they the said defendants then and there, to-wit, on the 24th day of May, 1876, became liable to pay to the plaintiff, for the use of said Lanham, the said sum of $300.00, the value of the property aforesaid; and whereas, the defendants afterwards, to-wit, on the day and year first above mentioned, in consideration of the premises, then and there promised to pay the said sum of $300.00 to the plaintiff, for the use aforesaid, on request, yet they have disregarded their promise and have not paid the said sum of money, or any part thereof, to the plaintiff's damage for the use aforesaid, of $500.00. And thereupon this suit is brought.

" BOWYER & MOLLOHAN AND GUNN, P. Q."

The bond in the declaration mentioned is as follows:

" Know all men by these presents, That we, George Harmon, principal, and Thomas P. Carpenter and R. N. Lilly, his sureties, are held and firmly bound unto the State of West Virginia in the sum of $300.00, to the payment whereof well and truly to be made, we jointly and severally bind ourselves, our heirs and personal representatives firmly by these presents, as witness our hands and seals this 24th day of May, 1876.

" The condition of the above obligation is such that whereas, John W. Lanham has sued out before Joshua S. Morris, a justice of Putnam county, West Virginia, a writ of *fieri facias* against the goods and chattels of Elihu Harmon, which writ has been placed in the hands of

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

James M. Harrison, a constable of said county, who has levied the same upon one horse and a yoke of oxen as the property of the said Elihu Harmon, which property is claimed by the said George Harmon. Now, if the said George Harmon will prove in any suit brought upon this bond within three months after the date hereof that he is the owner of said property so levied upon as aforesaid, or if he fail to do so, if he the said George Harmon, will pay the value thereof, then this obligation is to be null and void, else to remain in full force.

"George $\overset{\text{his}}{\underset{\text{mark.}}{\bowtie}}$ Harmon,    [Seal.]

"Thomas P. Carpenter,    [Seal.]

"R. N. Lilly.    [Seal.]

" Teste :—A. J. Loyd, as to Harmon."

At a circuit court held for said county on the 24th day of October, 1876, the parties appeared in court by their attorneys, and the defendants demurred to the plaintiff's declaration, and the plaintiff joined in said demurrer. The court overruled the demurrer. And thereupon the defendants pleaded that they did not assume upon themselves in manner and form as the plaintiff in her declaration hath alleged, and of this they put themselves upon the country, and the plaintiff did the like; and issue was thereupon joined. Afterwards, on the 26th day of October, 1876, the cause was continued at the cost of the plaintiff; afterwards, on the 30th day of April, 1877, the parties again appeared in court by their attorneys, and thereupon came a jury of twelve good and lawful men, tried and sworn to well and truly try the issue joined, and afterwards, after having fully heard the evidence adduced in the cause and the arguments of counsel, found the following verdict: " We the jury find for the defendants." And thereupon the plaintiff moved the court to set aside said verdict and grant a new trial in the cause, which motion the court overruled. It appears by the record, that on the trial of the cause

the plaintiff tendered five bills of exceptions numbered 1, 2, 3, 4 and 5, respectively to opinions of the court given on the trial, which were received, signed, sealed and saved to him, and ordered to be made a part of the record. The said Lanham, the usee, on the 28th day of June, 1877, upon his petition and assignment therein of error, obtained from this court a writ of error and *supersedeas* to the said judgment of the said circuit court rendered in this cause.

The first question to be considered in reviewing this cause is, whether the court erred in overruling the defendants' demurrer to the plaintiff's declaration. The 10th section of chapter 99 of the Code of 1868 of this State, is as follows: "10. An action of debt or *assumpsit* may be maintained on any note or writing, whether sealed or not by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby or his agent." In order to a right understanding of this section it is necessary to enquire into and understand the history of the said tenth section of our Code. The said tenth section as it appears in the said Code of 1868 is substituted for the 10th section of chapter 144 of the Code of Virginia of 1860, which is as follows: "10. An action of debt may be maintained upon any note in writing by which there is a promise, undertaking or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent." The 10th section of chapter 144 of the said Code of 1860 was in force in this State up to the time the Code of 1868 of this State took effect which was the 1st day of April 1869, and was taken from the fourth section of an act of the Legislature of Virginia which was passed on the 13th day of Janurary, 1813, which is found in the 1st volume of the Code of Virginia of 1819 chapter 125, page 484, and which is as follows: "9. An action of debt may be maintained upon a note or writing by which the person signing the same shall promise or oblige himself to pay a sum of money or quantity of tobacco to another." This last re-

1819
Special Term.

The State for
use of Lanham
v.
Harmon et al.

cited section is taken from earlier legislation of Virginia to the same effect.

In the case of *Peasley* v. *Beatright,* 2 Leigh 195, the object and intent, and I might add the necessity for such legislation as is contained in the 4th section of chapter 125 of the Code of Virginia of 1819 and of said Code of 1860 is explained with great clearness by Judge Carr, at pages 198 and 199, where Judge Carr says : "We know that at common law, an action of debt could not be maintained on a *promissory note,* as of itself importing a debt ; but the plaintiff must declare upon the contract, as in *assumpsit,* stating and proving the real consideration at large. The note, though it could not be declared on, might be given in evidence in support of the contract stated, as (for instance,) on a count for money lent. As commerce advanced in its progress, it was found convenient to resort to a less complicated instrument than bills of exchange ; and this brought promissory notes very much into use. It was attempted to place them on the footing of bills of exchange, and to bring debt upon them, as of themselves importing a consideration ; this was opposed by Lord Holt, *totis viribus,* who (as Lord Kenyen observes in *Brown* v. *Harraden,* 4 T. R. 151,) most pertinaciously adhered to his opinion, that no action could be maintained on promissory notes as instruments, but that they were only to be considered as evidences of debt. He insisted, that actions upon notes as such, were innovations upon the rules of the common law ; and that declarations upon them amounted to setting up a new sort of specialty unknown in Westminister, *Clarke* v. *Martin,* 2 Ld. Ray. 757 ; *Story* v. *Atkins, Id.* 1430 ; *Trier* v. *Bridgman,* 2 East. 359 ; *Pierson* v. *Garrett,* Amb. 227 ; to put an end to this controversy, the statute 3 and 4 Anne, ch. 9, §1, enacted that all notes signed by a person, promising to pay to another, his order or bearer, any sum of money, should be construed to be by *virtue thereof,* due and payable to any person, to whom the same is made payable. One effect of this statute was, that an action of debt might be

1879
Special Term.

The State for
use of Lanham
v.
Harmon et al.

maintained on a promissory note *without alleging a consideration,* and of consequence not very long after this change was effected by the statute of Anne, our assembly passed a law resembling that statute very strongly as respects promissory notes ; 4 Hen. Stat. at Large, May 1730, ch. 5, pp. 273–5.

"It enacts, that 'to the end the recovery of money upon promissory notes, and other writings without seal, may be rendered more easy, &c., if any person shall sign any note or by any other writing shall promise and oblige himself to pay any sum of money, or quantity of tobacco, to any other person, such person to whom the money, &c., is payable, shall and may commence and maintain an *action of debt, and recover judgment for what shall appear to be due thereupon,* with costs.' By the same act such notes were made assignable, and the assignee enabled to sue in his own name, allowing all discounts against the assignor. These provisions from that day to this have continued to be the law. It seems to me, that the object and effect of this legislation was to put promissory notes on the same footing here which they occupy in England, except giving to them the character of bills of exchange, which was prevented by the clause allowing discounts. There can be no doubt that our act meant to enable the holder of such notes to bring debt on the *note itself,* without laying or proving any consideration ; the defendant having it always in his power, from the nature of the instrument, to go into the consideration. If the act did not mean this, it is impossible to conceive what was its object. It expresses the intention of rendering the recovery on such notes more easy. How ? Not by giving debt *on the contract,* for that lay at common law, but by giving debt on the *note* itself, and thus dispensing with the necessity of laying a consideration." Judge Carr delivered the unanimous opinion of the court. In this case a part of the syllabus is "In debt on promissory note : *Held,* plaintiff need not aver in declaration, or prove, consideration ; though defendant may go into evidence touching consideration."

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

In *Hollingsworth* v. *Milton*, 8 Leigh 50, it was held that "under the statute of Virginia, 1 Rev. Code, ch. 125, §4, an action of debt will lie for the payee against the acceptor of an order." In the case of *Beirne, &c.,* v. *Dunlap,* 8 Leigh 514, the syllabus of the case is, " By a writing obligatory, the obligors promise on or before a specified day, to pay the obligee $813.79 in notes of the United States Bank, or either of the Virginia banks, and *debt* is brought on this writing: *Held,* the action cannot be maintained." The bond in this case was held not to be a money bond. The case was decided in 1837.

The only substantial change made in the 10th section of chapter 144 of the Code of 1860, by the 10th section of chapter 99 of the Code of this State, is the insertion therein of these words "or *assumpsit,*" and the words "whether sealed or not." What was the purpose or intent of the Legislature in making the amendment or change of section 10 of chapter 144 of said Code of 1860? It could not have been to enlarge the remedy of action of debt so far as I now see from the language employed; for the action of debt would lie on the sealed writings to pay money without the amendments. It could not have been to authorize the action of *assumpsit* upon any note or writing by which there is a promise, undertaking, or obligation to pay money, if the same were signed by the party to be charged thereby or his agent; for *assumpsit* already lay therefor. It seems to me then that the only object had in view by the Legislature in the change or amendment was to authorize the action of *assumpsit* on such instruments of writing for the payment of money, when they were under seal. And I apprehend that even now, under the 10th section of the Code of 1868, an action of *assumpsit* would not lie on the writing obligitory declared upon in the said case of *Beirne* v. *Dunlap,* 8 Leigh 514, because the same is not a money-bond, and neither would an action of debt lie upon it, for the same reason. Upon such a writing obligatory covenant is still the proper, and I apprehend the only remedy.

1879
Special Term

The State for
use of Lanham
v.
Harmon et al.

The action of *assumpsit* may be defined to be (at common law) an action for the recovery of damages for the non-performance of a *parol* or *simple* contract, or, in other words, a contract not under seal nor of record, circumstances which distinguish this remedy from others: for the action of debt is, in legal consideration, for the recovery of a debt *eo nomine* and *in numero,* and is most frequently brought on a deed; and the action of *covenant,* although in form for the recovery of damages, can only be supported upon a contract under seal. *Assumpsit,* however, is not sustainable, unless there have been an express *contract,* or unless the law will *imply* a contract. Though founded upon contract, this action, as distinguishable from the *brevia formata,* and falling within the provision of the statute of Westminister, may be termed an action on the case. It is now, however, called an action of *assumpsit,* and when the term "case" is adopted in a statute, or otherwise, an action for a *tort,* in form *ex delicto,* is generally intended, and not an action in form *ex contractu* 1st vol. 7 Eng. ed. of Chitty on Plea. by Greening, pages 111, 112. The action of *assumpsit* lies at common law, on an implied as well as an express undertaking, Tucker's Com. vol. 2, 136; 4 H. &. M. 161; 1 Munf. 407; Chitty above cited.

Judge Tucker in the 2d vol. of his Commentaries at pages 137 and 138 says: "8. *Assumpsit* will not lie where the debt, for which the action is brought is *due by specialty*; for the specialty ought to be declared on; therefore it is necessary always in the declaration to set out, for what cause the debt became due, or it will be a sufficient reason to arrest the judgment. 2 Strange 1207; Cro. Ja. 206, 213. Here however, we must be careful to distinguish between cases where the simple contract is merged or extinguished by a subsequent specialty, and when it is merely recognized by it as an existing debt, and a mode is only prescribed for ascertaining and liquidating its amount, 7 Cranch 299. As

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

when there is a parol agreement to build a house, a subsequent covenant, that it should be measured by A. and B., and the value of the work thus ascertained, does not extinguish it. So when a preceding sealed agreement is only inducement to a subsequent parol contract, an action of *assumpsit* will lie, 1 Wash. 170; as when other terms or considerations are introduced into the parol contract."

I do not think the said change or amendment had the effect to give the action of *assumpsit* in all cases where the action of debt lies. As before stated, I do not think the amendment or change in said 10th section of chapter 144 of the Code of 1860, by the 10th section of chapter 99 of the Code of W. Va. of 1868 was intended to give the action of *assumpsit* upon any sealed instrument of writing, except one containing a promise, undertaking or obligation to pay money. The pleadings in *assumpsit* and debt upon sealed instruments are so materially different at common law in many respects, as in force with us, that the 10th section of said chapter 99 must produce great confusion and difficulty in practice in the absence of express legislation changing the pleadings in *assumpsit* so as to conform to and harmonize with the extension of the remedy of *assumpsit* made by the section. For instance, the general issue in debt upon a writing obligatory is *non est factum*, and no such plea is known in the action of *assumpsit*. The plea of *non assumpsit* is the general issue in *assumpsit;* and it puts in issue the consideration, &c. of the contract alleged in the declaration. This is so at the common law, and is still so with us, unless it can be determined that the said 10th section has by implication changed the common law rules of practice in *assumpsit*, when the action is founded upon a sealed promise, undertaking or obligation in writing to pay money, so as to make the pleadings and principles of law governing in actions of debt apply in actions of *assumpsit*.

In consequence of these difficulties, which appear al-

1879
Special Term.

The State for
use of Lanham
v.
Harmon et al.

most insurmountable under the present legislation, I do not feel at liberty to give a more enlarged or liberal interpretation of said 10th section of said chapter 99, so far as it applies to the action of *assumpsit* upon sealed instruments containing a promise, undertaking, or obligation to pay money, than I am bound to by the language or terms of the section applicable thereto. Under the present state of the legislation I think it is much more safe and simple to declare in debt upon a sealed instrument for the payment of money than in *assumpsit*.

The 106th and 107th sections of chapter 226 of the Acts of the Legislature of 1872–3 are as follows : "106. When an officer, by virtue of an execution, order of sale, or order of attachment, has levied on or attached, or is about to sell property claimed by any person other than the party against whom the execution or order is issued, if such claimant or another for him, with one or more sufficient securities sign and file with the justice, by whom the execution or order is issued, a bond to the effect that such claimant in any suit that may be brought on such bond, within three months after the date thereof, will prove that he was the owner of the said property at the time of such seizure, or if he fail to do so, will pay the full value thereof, the justice shall issue his order, directed to the officer having such execution, order of sale or attachment, commanding him to deliver up the property to the said claimant; and such officer shall obey the same. The money, if any, which may be recovered on such bond, shall be applied as the proceeds of such property would have been, if it had not been released as aforesaid. 107. Or the claimant in such case, without giving the bond mentioned in the preceding section, may apply to any justice of the county in which the levy or attachment was made, for an order to notify both the creditor and debtor to appear and show cause why the property should not be discharged from the levy, order of sale or attachment. Such order shall be returnable in five days or less from the date thereof, and be served and returned according to the command

1879
Special Term.

The State for
use of Lanham
v.
Harmon et al.

thereof; and if it be returned served, the justice on the return day thereof, or at such reasonable time thereafter as he may appoint for the purpose, shall hear the parties, or such of them as attend, and dismiss the claim, or order the officer to deliver the property to the claimant, as the right shall appear; and the party prevailing shall recover his costs. The justice may also make any order necessary to prevent the property from being sold before the right thereto is determined as aforesaid."

I think it is obvious, that the 106th section was intended to provide a remedy, by which the right of the claimant to the property levied on &c., might be tried in an action brought on the bond in said section mentioned within three months after the date of such bond, and if the property levied on, or any part thereof, should on the trial of such action be found not to be the property of the claimant, that the parties to such bond should be held for and have verdict and judgment against them for the value of such property. The said 106th section is a very singular one. It is substantially taken from the 151st section of chapter 50 of the Code of this State, which seems to have been taken from an act of the Legislature of this State, passed in 1863, section 188. No such provision was to be found in the acts of the Legislature of this State or of Virginia prior to 1863. Bonds usually contain conditions, the breach of which before action brought gives the right of action. But the bond prescribed under said section 106 is not of that character, and the right to recover the value of the property seized, or any part thereof, in a suit brought on the prescribed bond within the prescribed time, depends upon the failure of the claimant of the property levied on to prove at the trial that he was the owner of the property or part thereof, at the time of its seizure, if it is susceptible of any reasonable construction. In other words, it seems to me that the substance of such bond, or at least the part directly applicable, is that the claimant of the property seized, &c., will pay the value thereof, or of such part

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

thereof as was not his property, at the time of its seizure &c., if it was not his at that time ; and that the declaration in a suit on such bond should, among other apt and proper averments, aver substantially that the property seized, nor any part thereof, &c., was not at the time of its seizure the property of the claimant, and also the value of the property so seized, and that by force of said bond and the said 106th section of chapter 226 of the Acts of the Legislature passed on the —- day of December, 1873, the defendants became liable to pay to the plaintiff for the use aforesaid the said sum of $——, the said value of said property, &c., &c. And if the defendants desire to rely upon their claim, that the property levied upon was in fact the property in whole or part of the claimant at the time of the seizure thereof, the same should be pleaded specially by proper plea, so that the issue as to the right of property in the claimant should be distinctly made. And the jury should be sworn substantially to try such issue, and to ascertain the value of such of the property in the declaration in the cause mentioned, as they shall find, if any, was not the property of the claimant at the time of the seizure thereof as in the declaration mentioned.

If said section 106 does not mean, or is not susceptible of the meaning I have given it, then I cannot conceive what it does mean. I humbly think however that the section should be amended materially, or repealed. But whatever may be the proper construction of the said 106th section, it seems to me, upon reason and principle it should, in the absence of further legislation, be held that an action of *assumpsit* will not lie on the bond in the declaration in this cause mentioned and set forth.

I am of opinion therefore that the circuit court erred in not sustaining the demurrer of the defendants, filed to the declaration in this cause. And if on sustaining the demurrer to the declaration the court could have seen that the plaintiff could amend his declaration so as to make it good, it should have allowed him to file an

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

amended declaration, and should have remanded the cause to rules for that purpose.

Perhaps the plaintiff may be allowed under the provisions of the 15th section of chapter 125 of the Code of this State to file a declaration in debt on said bond ; but I do not now definitely decide that question, as it has not been argued and is not now fairly presented. But I think it would be proper on sustaining the demurrer to the declaration in this cause to give the plaintiff an opportunity to amend his hand in this case, if he can, and shall be so advised, by filing an amended declaration.

Under the views I have taken of this case and before given, it is unnecessary to decide any of the questions which were made and decided in the court below after overruling the defendants' said demurrer, as they have become immaterial under a declaration in *assumpsit.*

For the foregoing reasons the judgments of the circuit court of the county of Putnam rendered in this cause on the 2d day of May, 1877, and the 24th day of October, 1876, which last overrules the demurrer of the defendants to the declaration filed in the cause, are erroneous. The judgment of the said circuit court rendered in this cause on the 24th day of October, 1876, overruling the demurrer of the defendants filed to the plaintiff's declaration must therefore be reversed and annulled, and also all the subsequent proceedings had in the cause before said circuit court, including the said judgment rendered in the cause by said circuit court on the 2d day of May, 1877, must be reversed and annulled ; and the defendants in error being the parties substantially prevailing in this court, the plaintiff in error John W. Lanham must pay the defendants in error, George Harmon, Thomas P. Carpenter and R. N. Lilly, their costs about the writ of error and *supersedeas* in this cause expended in this court. And this court proceeding to render such judgment as the said circuit court should have rendered upon the demurrer of the defendants filed to the plaintiff's declaration in this cause, it is considered

1879
Special Term.

The State for
use of Lanham
v.
Harmon *et al.*

by the court that the plaintiff's said declaration is insufficient in law, and that therefore the defendants' demurrer thereto be and is hereby sustained; and this cause is remanded to the said circuit court with instructions to allow and permit the plaintiff to file an amended declaration therein within such time as the said court may deem reasonable, if the plaintiff or the usee shall be advised so to do; and for that purpose the court may remand the cause to rules; but if such amended declaration be not filed within such time as the said court shall deem reasonable, then the case to be dismissed by said circuit court at the costs of the usee, John W.. Lanham; and for such other proceedings to be had in the cause as are in accordance with the principles settled by this opinion and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.