# CHARLESTON.

MIDDLE STATES LOAN, BUILDING AND CONSTRUCTION CO. *v.*
ENGLE *et al.*

Submitted Sept. 10, 1898—Decided Dec. 10, 1898.

1. ASSUMPSIT—*Guaranty—Loan—Chattel Mortgage.*

    *Assumpsit* will lie on a writing under seal guarantying repayment of money borrowed evidenced by borrower's bond, and secured by collateral mortgage which is to be repaid in monthly installments and payment of monthly dues on stock, and providing that, after six months' default in monthly payments, at option of the lender the principal debt shall at once become due and collectible and the mortgage foreclosed, when default has been made and mortgage foreclosed in a court of competent jurisdiction having jurisdiction of the subject-matter and parties, and a decree ascertaining the balance due after subjecting all the property embraced in the mortgage on account of the debt.    If the insolvency of the principal debtor be alleged.    (p. 592).

2. GUARANTY— *Chattel Mortgage—Guarantor's Liability —Insolvency.*

    The contract of a guarantor is collateral and secondary, and when he guaranties the payment of a bond secured by collateral mortgage referred to in the bond he is not liable upon his guaranty until resort has been had to the mortgage, also to the bond, for the collection of the moneys secured, unless the principal be insolvent, rendering further pursuit fruitless.    (p. 559).

Error to Circuit Court, Jefferson County.

*Assumpsit* by the Middle States Loan, Building & Construction Company against John H. Engle and another. The court sustained a demurrer to the third count of the declaration, and plaintiff brings error.

*Affirmed.*

Joseph Trapnell and Benjamin Trapnell, for plaintiff in error.

Forrest W. Brown and Jacob F. Engle, for defendants in error.

McWhorter, Judge:

The Middle States Loan, Building & Construction Company brought its action of *assumpsit* in the circuit court of Jefferson County against John H. Engle and Thomas Jones, as guarantors of G. Frank Engle, and at April rules, 1897, filed its declaration containing the common counts, and three special counts. The defendants demurred to the declaration and to each count, in which the plaintiff joined. The court overruled the demurrer to the first and second counts and the common counts, and sustained it as to the third special count. Plaintiff, by leave of the court, withdrew the first and second special counts and the common counts, and the court, being of opinion that the action could not be maintained upon the contract set out in the remaining (third) count dismissed the action, but without prejudice to which ruling of the court plaintiff excepted, and obtained a writ of error. The said third count is as follows: "And whereas, also, the said G. Frank Engle, at the time of the promises and undertakings of the defendants, hereinafter mentioned, was indebted to the plaintiff in a certain other sum of money, to-wit, in the sum of $800, and being so indebted, the said G. Frank Engle did execute and deliver to the plaintiff a certain obligation, in writing, signed and sealed by him, in words and figures following, to-wit : 'Know all men by these presents, that G. Frank Engle, of Brunswick, Frederick county, and state of Maryland, is indebted to the Middle States Loan, Building and Construction Company, of Hagerstown, Md., in the sum of $800.00, being the amount of a loan this day received by him from said company, with interest thereon from this date, payable monthly. Now, the condition of the above obligation is such, that if the said G. Frank Engle shall pay the interest monthly on said sum of $800.00, received by him, and shall make the monthly payment monthly on sixteen shares of stock of said company, subscribed for by him

in said company, eight of such shares being premium shares required to be taken for the loan instead of the usual premium, and any and all fines assessed against him or his said shares of stock, and shall likewise pay, when due, the taxes assessed against the property mortgaged, to secure the payment of said loan of eight hundred dollars, and the premiums necessary to keep the building on said mortgaged property insured from loss by fire, in such sum as the said company may require (not exceeding two thousand dollars), until the said stock subscribed by him, as aforesaid, becomes fully paid in and of the value of one hundred dollars per share, then it is understood that upon the surrender of said stock to said company this obligation shall be deemed fully paid and canceled.  But if he fail to pay when due and payable the said taxes and insurance premiums, or make default in the payment of said monthly interest, fines, and monthly payments on said stock for a period of six months after the same or any installment thereof is due, then, at the option of the said company, the whole indebtedness evidenced by this obligation (including any taxes and insurance premiums due or paid by said company) shall at once become and be due and collectible, and a foreclosure of said mortgage in the manner therein provided may be had; but if the money due on this bond is paid or collected by the company by suit or foreclosure before the stock subscribed for shall have matured as aforesaid, then such rebate, if any, from payments on the premium shares will be allowed as the board of directors of this company shall, in their discretion, deem equitable.  And thereupon, heretofore, to-wit, on the said 27th day of August, 1894, the said defendants and each of them did guaranty and faithfully promise the payment to the plaintiff of the said sum of money and interest, by a certain writing under seal, indorsed on the said obligation and signed by the defendants, in words following, to-wit: 'In consideration of the Middle States Loan, Building and Construction Company, of Hagerstown, Md., making a loan of eight hundred dollars to G. Frank Engle, and for the securing of the payment of which the said Engle did execute and deliver to the said company the within bond,

and a mortgage of even date herewith, we and each of us hereby guaranty the payment of said sum of eight hundred dollars by the said Engle to the said company, on the terms and in the manner set out in said bond and mortgage. Witness our hands and seals this 27th day of August, 1894.' That, default having been made by the said G. Frank Engle in his payments to the plaintiff, according to the tenor and effect of the said obligation the said debt and interest became due and payable, and the plaintiff instituted and prosecuted, in the circuit court of Frederick county, in the state of Maryland, a court of record having juris-. diction of the subject-matter and the parties, a proceeding in equity against the said G. Frank Engle, and for the foreclosure of the mortgage in the bond referred to, and that such proceedings were had that, after fully subjecting the property embraced in the said mortgage, it was ascertained by a decree of the said court that there remained due the plaintiff, on account of the obligation in writing aforesaid, a balance of nine hundred and thirty-five dollars and twenty-six cents as of the 8th day of August, 1896, and that the said decree remained wholly unsatisfied; that the defendants were duly notified of these facts, and thereby, according to the tenor of their said guaranty, they did on the day and year last aforesaid become liable to pay to the plaintiff the said sum of money, with interest, as aforesaid. And, being so indebted, the said defendants afterwards, on said day and year, in consideration of the premises, promise to pay said several sums of money and interest, respectively, to the plaintiff on request. Yet they have disregarded said promises, and have not paid the said moneys or any part of them, to the plaintiff's damage one thousand and five hundred dollars."

The question arising upon the record is whether the circuit court erred in sustaining the demurrer to the third special count. The court says, "Being of opinion that this action cannot be maintained upon the contract set out in the remaining (third) count of the declaration, doth sustain the demurrer thereto, and doth order the plaintiff's action to be dismissed, without prejudice." I deem it unnecessary to go into the origin and history of the action of

*assumpsit.* That is found in the text-books. However, it grew out of the necessity for a broader, more liberal and comprehensive form of action than the old actions of debt and covenant, and in order to make the action of *assumpsit* still broader in its scope the legislature has from time to time enlarged it. In *State* v. *Harmon,* 15 W. Va. 115, Judge Haymond gives us a comprehensive history of the legislation upon this subject, which legislation has finally evolved section 10, chapter 99, Code 1868, which provides that "an action of debt or *assumpsit* may be maintained on any note or writing, whether sealed or not, by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby or his agent." It is insisted by the appellees that the instrument upon which the guaranty is indorsed is not for the unconditional payment of money alone, and that it comes within the purview of the case of *State* v. *Harmon, supra,* which was an action based upon a bond for three hundred dollars, conditioned that if the principal could prove in any suit brought upon the bond within three months that he was the owner of certain property levied upon as the property of another, or, if he should fail to do so, would pay the value thereof, then the bond to be void, upon which bond the court held the action of *assumpsit* could not be maintained because it was not "such a bond, not being such a sealed instrument of writing, containing a promise, undertaking or obligation to pay money as that upon which said tenth section of chapter 99 of said Code authorizes an action of *assumpsit* to be brought." The case at bar is quite different. The bond is for the repayment of eight hundred dollars loaned money. The principal made his bond providing for its repayment in certain monthly payments, and further providing that, if he made default for a certain specified time in his monthly payments, then the whole sum of eight hundred dollars should at once become and be due and collectible, and a foreclosure of the mortgage executed on property to secure it should be had. And the defendants guaranteed the payment of the eight hundred dollars by the principal to the plaintiff on the terms and in the manner set out in the said bond

and mortgage. The declaration avers that default was made by the principal, that proceedings were had for foreclosure of the mortgage in a court of record of competent jurisdiction having jurisdiction of the subject-matter and the parties, and the property covered by said mortgage was fully subjected thereto, and by decree of said court it was ascertained that there remained due the plaintiff on account of the said obligation in writing a balance of nine hundred and thirty-five dollars and twenty-six cents as of the 8th day of August, 1896, and that the said decree remained wholly unsatisfied, of all which facts the defendants were duly notified. Here there is default of the principal, a legal subjection of the mortgaged property to payment of the obligation as far as it would go, and ascertainment by a competent court of the exact amount of the balance due from the principal debtor, and the guaranty by the defendants in writing for the payment of the debt. If the plaintiff had pursued the principal debtor still further, and had taken personal judgment against him and exhausted his other property, if any he had, and had averred such proceedings in its third count in the declaration, or had averred the insolvency of the principal to show that further pursuit would be fruitless, I think the declaration would have been good on demurrer. "A guarantor is one who becomes responsible for the debt, default, or miscarriage of another person. * * * The contract of a guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not his contract, and he is not bound to take notice of its non-performance." 1 Brandt, Sur. s. 1. "The contract of a guarantor is collateral and secondary ; that of a surety is direct. The guarantor contracts to pay if, by the use of diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and so is responsible at once if the principal debtor makes default." *Kearn s v. Montgomery*, 4 W. Va. 29. So in *Barman* v. *Carhartt*, 10 Mich.338, (Syl. point 1) : "Where

one guaranties the collection of a note which is secured by a collateral mortgage referred to in it, and at the same time assigns the mortgage with the note, he is not liable upon his guaranty until resort has been had to the mortgage as well as to the note for the collection of the moneys secured." Also *Johnson* v. *Shepard*, 35 Mich. 115: "A guaranty of collection of a debt secured by mortgage creates no obligation on the part of the guarantor to pay until after foreclosure, decree, and a failure to obtain payment out of the mortgaged premises and out of the property of the principal." In *Farrow* v. *Respess*, 33 N. C. 170, on the guaranty, "I hereby guaranty the payment of the within note," it was held the guarantor was not primarily liable, and in order to charge him it was necessary that the creditor should be diligent in endeavoring to collect the note from the principal unless diligence would have been unavailing. Also, *Benton* v. *Gibson*, 1 Hill (S. C.) 56; *Rudy* v. *Wolf*, 16 Serg. & R. 79 ; *Johnston* v. *Chapman*, 3 Pen. & W. 18. In *Kern* v. *Ziegler*, 13 W. Va. 707 (Syl. point 1), "Under section 10, chapter 99, Code 1868, *assumpsit* will lie on a writing under seal containing dependent covenants, when the covenants sued on contains a provision, undertaking, or obligation to pay money, when the instrument is signed by the party to be charged or his agent." The appellees say that "*non est factum* is the general issue in debt upon writing obligatory, but no such plea is known in the action of *assumpsit*," and call attention to the fact that in this very case one of the defendants will and must rely upon that plea, because he claims that his signature to the writing sued upon is a forgery. If it be true that *assumpsit* cannot be maintained upon a writing obligatory because, perchance, the defendant might be under the necessity of pleading *non est factum* in order to make a complete defense, then section 10 is indeed rendered nugatory. I apprehend, however, that this is fully provided for by section 40, chapter 125, Code : "Where a declaration or other pleading alleges that any person made, endorsed, assigned or accepted any writing, no proof of the handwriting of such person shall be required, unless the fact be denied by an affidavit with the plea which puts it

in issue." And this really is all there is in the plea of *non est factum*,—simply a denial under oath of the making of the writing obligatory. The judgment of the circuit court sustaining the demurrer to plaintiff's third count of the declaration, and dismissing the action without prejudice, is affirmed.

*Affirmed.*