# CHARLESTON.

MAXWELL *et al. v.* BURBRIDGE.

Submitted June 11, 1897—Decided December 8, 1897.

1. EQUITY PLEADING—*Answer—Receipts—Handwriting.*

   A defendant in a chancery suit in his answer alleges that plaintiff's decedent delivered his three receipts to respondent for money paid him on account of the matter in controversy, and files with his answer, as part thereof, what purport to be the original receipts. Such receipts, under section 40, chapter 125, Code, will be regarded by the court as genuine, without any proof of the handwriting, unless the fact that such receipts were made by plaintiff's decedent is denied by affidavit.   (p. 255.)

2. EQUITY PLEADING—*Handwriting—Depositions—Error.*

   Unless such affidavit is filed, it is error to admit depositions, taken on behalf of plaintiff, attacking the genuineness of such receipts.   (p. 255.)

3. EQUITY PLEADING—*Receipts.*

   An allegation that plaintiff delivered his receipts to respondent is equivalent to alleging that he made such receipts.   (p. 254.)

Appeal from Circuit Court, Doddridge County.

Suit by W. Brent Maxwell, as administrator of the estate of Franklin Maxwell, deceased, and others, against J. P. Burbridge.   From a decree for plaintiffs, defendant appeals.

*Reversed.*

G. W. FARR, for appellant.

MILLARD F. SNIDER, for appellees.

McWHORTER, JUDGE:

On the 14th day of December, 1889, Franklin Maxwell and J. P. Burbridge entered into the following contract: "This agreement, made this 14th day of December, 1889, between Franklin Maxwell and J. P. Burbridge, witnesseth, that said Maxwell doth sell, with covenants of general warranty, all the land he has on the north side of Red Lick run, adjoining said Burbridge's land and the Ab. Stout or Walker 79½ acres on the ridge, or point to the ridge, next Allumbank, to the lines on said ridge, around the head of Sleeper run, and, with the lines of the Thaddeus Sutton tract, to a gum; thence back, with lines of Greathouse tract, to the 4 chestnuts; thence to 2 C. O., and to a white oak,—at the price of five dollars per acre, with interest from the 22d day of November, 1882, and all but two hundred dollars of the money, and interest on that from the 14th day of December, 1889, subject to a credit of twenty-five dollars paid on the 22d day of Nov., 1882, and paid as per receipt; also, one hundred dollars the 15th of April, 1889; and also for a yearling steer, $18.00, fall of 1888. Witness our hands and seals. And a vendor's lien is herein retained for the purchase money. Witness," *etc.* "Franklin Maxwell. [Seal.] J. P. Burbridge. [Seal.]" And on the same day said Burbridge executed to said Maxwell the following obligation: "For the land this day bought of Franklin Maxwell, I promise to pay said Maxwell five dollars per acre for forty acres, with interest from this 14th December, 1889, and five dollars per acre for all the balance, with interest from the 22d day of November, 1882, till paid. Said land here bought includes all the land said Maxwell now has on the north side of the Red Lick run, adjoining lands of myself, the Ab. Stout or Walker tract of 79½ acres on a ridge, or point to the ridge, next to Allumbank; thence westwardly, with lines of Williams tract, to the land of Sleeper run, to Thad. Sutton tract, and with a gum corner of said tract and of Greathouse; thence, with Greathouse tract, back to a W. O. corner; thence back with my line, to the beg. And this is subject to a credit of twenty-five dollars, paid on the 22d Nov., 1882, when I bought the most of the land, and $18.00

paid in a yearling steer, fall of 1888, and one hundred dollars paid as per rect., April 15th, 1889. Witness my hand and seal this 14th Dec., 1889. And the first note to be given up, which was dated Nov. 22d, 1882. J. P. Burbridge.'' At the May rules, 1894, W. Brent Maxwell administrator of the personal estate of Franklin Maxwell, deceased, and Frances Jane Maxwell, widow, and Lemon Maxwell, Lewis Maxwell, Porter Maxwell, and W. Brent Maxwell, only heirs at law, of Franklin Maxwell, deceased, filed their bill in equity in the clerk's office of the circuit court of Doddridge county against J. P. Burbridge ; alleging the sale of said land at five dollars per acre ; that the first named tract contained, by actual survey, seventy-one acres, and the other forty acres, making in all one hundred and eleven acres. And they exhibited with their bill said obligation of Burbridge, alleging that the purchase money of both of said tracts, except the credits shown in said obligation, was due, and still remained unpaid ; that Franklin Maxwell was deceased, and they were his only heirs at law, and were ready and anxious to convey said land to defendant, Burbridge, on payment by him to the administrator of Franklin Maxwell, deceased, of the unpaid purchase money, with interest, and the taxes paid on said land by said Franklin Maxwell and plaintiffs since the sale to the defendant, *etc.;* that defendant failed and refused to pay said unpaid purchase money, taxes, and interest,—and praying that said land be sold for the payment of said purchase money, and for general relief ; and exhibited with their bill, also, a memorandum showing the metes and bounds by actual survey of the said two tracts together, surveyed as one, as containing one hundred and eleven acres.

Defendant Burbridge demurred to said bill, which demurrer was overruled ; and at the July term, 1894, he tendered his answer to said bill, in which he objected to being compelled to file his answer until plaintiffs should file in the papers of the cause the notes, or single bills, held by said administrator against respondent, and alleged that about 1882 he purchased from Franklin Maxwell a tract of land, which said Maxwell claimed contained ninety-five or ninety-six acres, at five dollars per acre, and that

for said number of acres defendant gave his notes, or
single bills, one of which Maxwell agreed to deliver up to
respondent, as shown by the contract first above copied,
and which is exhibited with the answer ; that respondent
purchased from Maxwell a tract of forty acres more on the
14th of December, 1889, as shown by the second paper
hereinabove copied ; and that said Maxwell made to re-
spondent a title bond to the ninety-five acres in 1882, and
that the same had been mislaid or destroyed, or else was
in possession of Maxwell's administrator. "Respondent
further says:    That he executed obligations to said Max-
well for ninety-five and forty acres of land,—one hundred
and thirty-five acres of land,—at five dollars per acre.
That he paid therefor as follows, to wit:    November 22,
1882, twenty-five dollars; eighteen dollars for yearling steer,
fall of 1888;  one hundred dollars April 15, 1889, as shown by
Exhibit No. 1 (Maxwell's receipt); June 17, 1891, fifty-six
dollars ; April 13th, ninety dollars (think it was in 1891,
not certain as to exact date); and two hundred and twenty-
nine dollars on September 17, 1891 ; all aggregating five
hundred and eighteen dollars,—except respondent paid
first note off, which respondent thinks was about one
hundred and eighty dollars, and payable in one or two
years from its date, and which was paid before said Ex-
hibit A was executed; and the above payments were
made on the supposed balance yet claimed to be unpaid by
said Maxwell, and for which the last payment, Maxwell's
receipts are here filed, as parts 2, 3, and 4 hereof.    Re-
spondent further says that said Maxwell delivered said
receipts to respondent for said payments, and that re-
spondent let him have the cattle and pension check referred
to therein, and that the same was paid to said Maxwell
on said tract of land.    Respondent further says that,
after said Maxwell had sold said tracts to respondent as
ninety-five and forty acres, said respondent discovered
that instead of being one hundred and thirty-five, as
he had purchased, there was only about seventy-one
acres, all together (if that amount), instead of one
hundred and thirty-five acres, as respondent purchased
and gave his obligations for ; and respondent now avers
that in truth and fact he only got about seventy-one acres

of land ; that said Maxwell pretended to sell to respondent land that he did not own; and respondent says that he had nearly paid for this tract by payment of his first note, and that he does not owe said plaintiff any sum of money thereon, but that he has largely overpaid therefor, and that he is entitled to a decree for this against said plaintiffs, and that he is entitled to a general warranty deed for said tract of land from said plaintiffs. Respondent now here denies every allegation of plaintiffs' bill not herein admitted ; denies that he owes plaintiffs one cent; denies that the statement in said bill as to respondent's credits are correct; and respondent insists that he is entitled to credit for every cent herein claimed to he paid thereon.'' Respondent prayed that plaintiffs might be compelled to survey said tract, and make him a general warranty deed, and a settlement might be had of the matter, and he be decreed the amount due him, and his costs. Defendant filed with his answer four receipts for the last four sums mentioned in his answer as being paid to Maxwell; only the last three being questioned (those marked "2," "3," and "4," for fifty-six dollars, ninety dollars, and ·two hundred and twenty-nine dollars, respectively).

On the 26th day of November, 1895, the cause came on to be heard on the bill, and exhibits therewith filed; the answer of defendant, and replication thereto; and on the depositions taken in the cause by both plaintiffs and defendant; and upon the admission of defendant, made by counsel in court, that the quantity of land sold by Franklin Maxwell, deceased, to said defendant, is one hundred and eleven acres, as charged in the bill. And the court ascertained that there was due from the defendant to the administrator seven hundred and forty dollars and sixty-six cents, and decreed the sale of the one hundred and eleven acres of land, if the same was not paid within sixty days, and appointed commissioners to make sale of the same, and provided that, before sale was made under the decree, plaintiffs should execute to defendant a deed for the one hundred and eleven acres, and file with the papers, duly acknowledged for record. From which decree the defendant appeals to this Court, and assigns the following errors:

"(1) Court erred in overruling the demurrer to the said bill, and requiring your petitioner to answer, without the exhibits referred to being filed therein. (2) The court erred in not giving petitioner a day to answer said bill. (3) The court erred in not requiring the plaintiffs to file a deed with their bill. (4) The court erred in allowing the evidence for the plaintiffs to be filed, and in considering the same, until the issue was properly made up as required by law, which was not done. (5) The court erred in refusing petitioner credit for exhibits Nos. 2, 3, and 4, filed with petitioner's answer. (6) The court erred in ascertaining that petitioner was in debt to the said administrator $740.66. He should have credited exhibits 2, 3, and 4, which would have left to plaintiffs $283.18, for which a decree might have been given, under the proof, if anything was due. (7) The plaintiff, in his bill, charges that the money sued for was due. Your petitioner, by his answer, denies every allegation of the plaintiff's bill not admitted. This allegation was not admitted, and, not being supported by one word of proof, it is error to find the said debt, or any part thereof, to be due. (8) The court erred in not decreeing the commissioner should advertise a description of the land directed to be sold."

First assignment: "Court erred in overruling demurrer to plaintiff's bill, and requiring defendant to answer without the exhibits referred to being filed." It is contended that the bill is bad because Franklin Maxwell's heirs are improper parties to the suit. The suit is brought by the administrator for the purpose of enforcing the payment of purchase money for a tract of land sold to defendant by intestate, the legal title to which is vested in the heirs, who have a community of interest in the matter with the administrator. They were necessary parties to the suit, either plaintiffs or defendants, as a conveyance was necessary to be made by them before a sale could be made to enforce the payment of the purchase money. True, the heirs might have executed a deed, to be tendered with the bill of the administrator, in which event the heirs would no longer have been necessary parties to the suit. The exhibits mentioned in the bill were filed with it. The demurrer was properly overruled.

Second: "That the court erred in not giving defendant a day to answer the bill." It does not appear from the record that defendant objected to filing his answer, because not given time, but the answer itself shows that he objected only to being compelled to file his answer before the plaintiffs should file in the papers of the cause the notes, or single bills, held against him by the administrator. *Weinberg* v. *Rempe*, 15 W. Va., 829, syl., point 1.

The third assignment, that the court erred in not requiring plaintiffs to file a deed with their bill, is disposed of with the first assignment. The decree requires a deed to be executed for record, and filed in the papers of the cause, . before a sale shall be made of the land.

Fourth: "Court erred in allowing the evidence for the plaintiffs to be filed, and in considering the same, until the issue was properly made up as required by law, which was not done." Section 40, chapter 125, Code, provides: "When a declaration or other pleading alleges that any person made, indorsed, assigned, or accepted any writing, no proof of the handwriting of such person shall be required, unless the fact be denied by an affidavit with the plea which puts it in issue." Plaintiffs contend that the receipts 2, 3, and 4, filed with defendant's answer, were not sufficiently pleaded, under the statute just quoted, to compel an affidavit denying the genuineness of the handwriting, so it is obligatory on defendant to allege that the receipts or writings were made by Franklin Maxwell, which it is claimed he does not do, either in words or effect; but defendant says, "Maxwell's receipts are here filed, as parts 2, 3, and 4 hereof," and further says, "Maxwell delivered said receipts to respondent." Defendant alleges that they were Maxwell's receipts, and that said receipts were delivered to respondent by Maxwell. If this be true, it matters not who wrote them. They were adopted by Maxwell as his own, and he delivered them to respondent as such, and they have all the force and effect of the making and delivery; and the allegation that they were Maxwell's receipts, and delivered to respondent by him, is tantamount to the allegation that he made the receipts. He.passed them for his own. And being thus pleaded and exhibited to the court, under sec-

tion 40, chapter 125, Code, said receipts will be regarded by the court as genuine, without any proof of the handwriting, unless the fact that such receipts were written by Franklin Maxwell is denied by affidavit. *Robinson* v. *Dix*, 18 W. Va., 528, syl., point 4. The court erred in admitting the depositions of plaintiffs attacking the genuineness of said receipts Nos. 2, 3, and 4; the affidavit required by the statute not having been filed.

Fifth: "Court erred in refusing defendant credit for exhibits Nos. 2, 3, and 4, filed with his answer." This assignment is disposed of with the fourth.

Seventh assignment: While part of the land was bought as of November 22, 1882, the contract was made on the 14th day of December, 1889; at the time of the purchase of the forty acres by written contract of that date, including both tracts together; and upon this contract, and the obligation bearing the same date, filed as Exhibit A with plaintiffs' bill, the suit is based, the said obligation being in the nature of a demand note; and suit thereon was not brought for nearly five years after the date of the paper; so that under the contract the vendor had a right to bring his suit at any time.

As to the eighth assignment, section 1a, chapter 132, Code, provides that the commissioner appointed by a decree to sell shall, in his advertisement, state the time, terms, and place of sale, together with a description of the property to be sold; and it is not necessary to place such requirement in the decree. For the reasons herein stated, said decree is reversed, and the cause remanded, with directions to the circuit court to reduce the amount of the decree by the sums of fifty-six dollars, ninety dollars, and two hundred and twenty nine dollars, represented by the said three receipts, Nos. 2, 3, and 4.

*Reversed.*