# CHARLESTON

## LOVERIN & BROWNE COMPANY *v.* BUMGARNER.

Submitted January 11, 1906.    Decided February 13, 1906.

1. GUARANTY—*Construction—Action against Guarantor.*

The following written guaranty made by J. H. B. to L. & B. Co. for the benefit of his infant son H. B. viz: "For the purpose of enabling H. Bumgarner to purchase goods upon credit from Loverin & Browne Co., of Chicago, I hereby guarantee that said H. Bumgarner shall promptly pay them for all goods which they may hereafter sell to him upon credit until this guarantee is revoked. Said payment to be made within ten (10) days after receiving goods, my liability hereinunder shall cover any balance to become due not exceeding Five Hundred Dollars. Goods ordered under this Guarantee

may be returned within ten days after receiving same at invoice
price if goods are returned in good order properly packed. Dated,
Elizabeth, W. Va., July 11th, 1903. J. H. Bumgarner. (Seal)."
*Held:* to be a guaranty of payment absolute and unconditional, up-
on which a suit may be commenced against the guarantor without
any previous suit against the principal.   (p. 54.)

2.  GUARANTY—*Time of Payment—Breach.*
    When the terms of a guaranty of payment fix the time within
which the payment shall be made, if the payment is not made
within the time prescribed there is a breach of the guaranty and
no steps need be taken against the principal, nor need his insolven-
cy be shown in order to charge the guarantor.   (p. 52.)

3.  EVIDENCE—*Letters—Genuineness.*
    The genuineness of a letter is sufficiently established to permit
its introduction in evidence when it is shown that it was received
in due course of mail in response to a letter sent to the supposed
writer.   (p. 61.)

4.  EVIDENCE—*Letters, Copy of.*
    And, upon notice having been given to such writer to produce the
original of the letter to which his was a reply and his failure to
produce such original, a letter press copy thereof is admissible in
evidence.   (p. 61.)

5.  EVIDENCE—*Harmless Error.*
    The admission of incompetent evidence over objection will not
reverse a judgment when it is clear that such error could have
worked no prejudice to the exceptor.   (p. 63.)

6.  SYLLABUS APPROVED—*Pleading—Denial—Affidavit.*
    Syllabus point 4, *Dix* v. *Robinson,* 18 W. Va. 528, and point 1 syl-
labus, *Maxwell* v. *Burbridge,* 44 W. Va. 248, approved.   (p. 64.)

Error to Circuit Court, Wirt County.

Action by the Loverin & Browne Company against J. H.
Bumgarner.   Judgment for plaintiff, and defendant brings
error.

*Affirmed.*

T. A. BROWN and D. C. CASTO, JR., for plaintiff in error.

F. T. LOCKHART and W. N. MILLER, for defendant in
error.

MCWHORTER, PRESIDENT:

This is an action of *assumpsit* brought by the Loverin &
Browne Co., a corporation, against J. H. Bumgarner in the
circuit court of Wirt county upon two guaranties in writing,
the first in the following words:

"'For the purpose of enabling H. Bumgarner to purchase

goods upon credit from Loverin & Browne Co., of Chicago, I hereby guarantee that said H. Bumgarner shall promptly pay them for all goods which they may hereafter sell to him upon credit until this guarantee is revoked.   Said payment to be made within ten (10) days after receiving goods, my liability hereinunder shall cover any balance to become due not exceeding Five Hundred Dollars.   Goods ordered under this Guarantee may be returned within 10 days after receiving same at invoice price if goods are returned in good order properly packed.   Dated, Elizabeth, W. Va.   July 11th, 1903.   Signed, J. H. Bumgarner, (Seal)."

The second, without date, but made in August as appears from the record, is in addition to the former, and is as follows: "For the purpose of enabling Harry Bumgarner to purchase goods upon credit from Loverin & Browne Co., of Chicago, we or I hereby guarantee that said Harry Bumgarner shall promptly pay them for all goods which they may hereafter sell to him upon credit until this guarantee is revoked. Said payment to be made within 10 days after receiving goods, we or my liability hereinunder shall cover any balance to become due not exceeding One Thousand Dollars.   Goods ordered under this guarantee may be returned within 10 days after receiving same at *invoice* prices if freight charges are paid and goods returned in good order properly packed. Signed, J. H. Bumgarner, (Seal)."

Plaintiff filed with its declaration a bill of particulars showing that it had sold in all under said guaranties to Harry Bumgarner goods to the amount of $2,001.97 and had been paid by said Bumgarner $1,312.46, leaving a balance due as claimed of $681.51, which bill of particulars was duly sworn to and the defendant notified that the plaintiff would rely upon the said stated account as its bill of particulars upon the trial of the action.

The defendant filed his counter affidavit that he believed there was no sum due from him to the plaintiff upon said demands stated in plaintiff's declaration and entered his plea of *non-assumpsit*.   The defendant also tendered his special plea that the plaintiff ought not to have or maintain his said action against him, because he says that the contract which the plaintiff was seeking to enforce against him was one in which the defendant was a guarantor for Harry Bumgarner who

was the alleged principal; that said Harry Bumgarner was
the principal in said contracts and that defendant was only
guarantor for said principal; that at the time of the making
of said contracts and promises and undertakings the said
Harry Bumgarner was an infant under the age of twenty-one
years, and that for further plea defendant says that the sev-
eral bills and articles of goods, wares and merchandise men-
tioned in plaintiff's declaration alleged to have been sold and
delivered to said Harry Bumgarner, he, the said Harry Bum-
garner, was an infant and that said goods, wares and mer-
chandise were not necessaries for the said infant.   Plain-
tiff took issue upon said plea and at the October term, 1904,
of said court plaintiff by leave of court withdrew its reply to
the special plea filed and moved the court to strike out said
special plea, which motion was sustained and the said special
plea stricken out, to which ruling the defendant objected and
excepted. The defendant then tendered a second special plea,
which was filed over the objections of the plaintiff, to which
ruling plaintiff excepted.   Said special plea was to the effect
that the contract upon which the plaintiff's action was based
was a contract of guaranty that Harry Bumgarner, the prin-
cipal, should be first required to pay the same and that plain-
tiff should have exhausted its remedy against him before
looking to the guarantor; that plaintiff had been negligent
in not pursuing its remedy against Harry Bumgarner and
that Harry Bumgarner was solvent at the time of making the
said accounts and at the time of the institution of the action
against defendant, and that if Harry Bumgarner was insol-
vent he had become so since default made in the payment of
the said claim, to which plea plaintiff replied generally.

On the 8th of February, 1905, a jury was sworn in the
case and not being able to agree upon a verdict were dis-
charged.   On the 10th of May, 1905, another jury was em-
panelled and sworn, and after hearing all the evidence and
the arguments of counsel and the instructions of the court re-
turned a verdict for the plaintiff assessing the damages at
$630.99.   The defendant then moved the court to set aside
the verdict and grant him a new trial on the ground that the
verdict was contrary to the law and the evidence, which mo-
tion was overruled by the court and judgment entered upon
said verdict.

In the progress of the trial the defendant took several bills of exceptions, which were signed, sealed and saved to the defendant. The case was brought to this Court upon writ of error and *supersedeas.*

The first cause of error assigned is in overruling the motion of defendant to set aside the verdict of the jury and grant him a new trial. This assignment will be disposed of in connection with other assignments hereinafter treated relative to the admission of testimony objected to by the defendant.

The second assignment is that the court erred in giving to the jury Instructions Nos. 1, 3, 4, 5 and 6 asked for by the plaintiff and set out in bill of exceptions No. 5; and the third assignment in refusing to give to the jury defendant's instruction No. 2 as set out in bill of exceptions No. 6. These instructions involve the character and effect of the two written guaranties made by the defendant J. H. Bumgarner and filed with the plaintiff's declaration. The plaintiff's instructions as set out in bill of exceptions No. 5 are to the effect that if the jury should believe from the evidence that the defendant signed and executed to the plaintiff the guarantee contracts sued upon and shown in evidence, and that upon the faith of such guarantees Harry Bumgarner or H. Bumgarner obtained the goods sued for from plaintiff and did not pay for some of the same within ten days thereafter as provided for in said contracts, then the defendant became at once liable to pay for the said goods up to the limit of his guarantee contracts and plaintiff was not bound to first pursue the principal before instituting this suit on said guarantee contracts and should find for the plaintiff the value of all such goods as they should find from the evidence had not been paid for by the principal within such limits. These instructions are given on the theory that the guaranties sued upon are unconditional guaranties for the payment of the money for Harry Bumgarner within ten days after the delivery of the goods to said Harry Bumgarner on the default or failure of the principal to pay the same. Harry Bumgarner was the infant son of the defendant, J. H. Bumgarner, who was anxious to start him in business and for that purpose made the guaranties sued upon in this case. The goods furnished to Harry Bumgarner under these guaranties were

not shipped to any place of business of the said Harry Bum-
garner but were sold by him to his customers and put up in
packages to fill the orders received by plaintiff from Harry
Bumgarner and the goods shipped in packages convenient to
be delivered, and consigned to the plaintiff itself at such
places as would be most convenient for the delivery by the
said Harry Bumgarner, and the bills of lading were sent en-
dorsed over by the plaintiff to Harry Bumgarner and in a
few instances endorsed by plaintiff over to defendant to be by
him endorsed over to Harry Bumgarner to enable him to get
the goods.   The circumstances of this case clearly indicate
that the defendant intended by his guaranty to be primarily
liable for the goods so delivered to his son who was a mere
boy, not competent under the law to contract or do business
for himself, and it was evidently contemplated that the ten
days after the receipt of the goods were given as time for
Harry Bumgarner to deliver the goods and collect the money
and make immediate payment thereof to the plaintiff less the
profits to the said Harry Bumgarner.   It is not reasonable to
suppose that plaintiff would have knowingly entered into a
business arrangement with an infant and furnished him goods
to sell and collect the proceeds, and it take all the risk of be-
ing defeated in its collection of the price of the goods on
his plea of infancy.   The proposition is too unbusinesslike to
be entertained for a moment and defendant, knowing this,
fully intended that his guaranty should be absolute and un-
conditional and his correspondence with the plaintiff, at least
such of it as was properly admitted as evidence at the trial,
clearly shows his intention in the premises to that effect.   It
is shown that he furnished money to his son, Harry Bumgar-
ner, on at least one occasion, a check for $400 to pay on his
indebtedness to plaintiff, of which Harry paid to plaintiff on-
ly $300.   In *Arents* v. *Commonwealth*, 18 Grat. 750, it is
held that although in general the contract of a guarantor is
to pay, if after due diligence the debt cannot be made out of
the principal, yet the intention of the parties must govern,
and if it was the guarantor's intention to make himself liable
on the default of the principal debtor without the use of the
ordinary means to compel payment by him or proof of his
insolvency he will be held accordingly.   That his contract in
such a case is a guaranty of payment or of punctual payment

by the principal debtor and not merely a guaranty of solvency or of ultimate payment after the usual means of enforcing it are employed. In the 18th Grat. case cited above, Joynes, J. in delivering the opinion of the court at page 770, after discussing the differences between the contract of a guarantor and that of a surety, says: "But while this distinction exists, in general, between the contract of a surety and the contract of a guarantor, we must, in every case, look to the terms of the guaranty and to the circumstances under which it was made, to ascertain, by the rules of construction, the character and extent of the undertaking. If it thus appears to have been the intention of the guarantor to make himself liable on the default of the principal debtor, without the use of the ordinary means to compel payment by him, or proof of his insolvency, he will be held liable accordingly. His contract, in such a case, is a guaranty of payment, or of punctual payment, by the principal debtor, and not merely a guaranty of solvency, or of ultimate payment, after the usual means of enforcing it are employed." See also *Douglas* v. *Reynolds*, 32 U. S. (7 Pet.) 113, at page 126. In *City of Memphis* v. *Brown*, 20 Wall. 289, the contracts there under consideration contained a provision as follows: "The City of Memphis will and does hereby guaranty to the contractor the payment of said accounts as so assessed against the property owner, or owners for the pavement according to the plans and specifications." The opinion of the court at page 311 referring to this provision says: "It will be perceived that this is a a guarantee of payment and not of collection merely, and upon which, upon general principles of law, a suit may be commenced againt the guarantor without any previous suit against the principal." Citing *Railroad Company* v. *Howard*, 7 Wall. 407; *Zabriskie* v. *Railroad Company*, 23 How. 381; *Leggett* v. *Raymond*, 6 Hill 641. In *Campbell* v. *Baker*, 46 Pa. St. 243, it is held: "A guaranty of the payment of a note 'when due,' is broken by non-payment at maturity: and the guarantor is then liable upon his contract to the creditor, who is not bound either to pursue the principal or show his insolvency." And so in *Roberts* v. *Riddle*, 79 Pa. St. 468: "A guaranty of the payment of a written obligation 'according to its terms' is broken by non-payment when

the time for payment arrives, and the guarantor is liable without pursuing the debtor to insolvency.''

The defendant to maintain his proposition that the guaranties sued upon were the ordinary collateral and secondary guaranties of payment, only after plaintiff's remedy against the principal should be exhausted, relies upon the case of *Building & Loan Association* v. *Engle*, 45 W. Va. 588, and *Kearns* v. *Montgomery*, 4 W. Va. 29. In the 45th W. Va. case the guaranty was upon a loan of $800 from the Loan Association to Frank Engle to secure which Engle had executed a mortgage on certain property and had given bond, and the guaranty was, ''the payment of said sum of eight hundred dollars by the said Engle to the said company, on the terms and in the manner set out in said bond and mortgage.'' The bond and mortgage were according to the forms and terms peculiar to building and loan association contracts and the guaranty could only mean that in case the mortgaged property failed to pay the debt, in case it had to be resorted to, and further that the bond of Engle should prove insufficient, to supplement it by the payment of any balance remaining unpaid after exhausting the mortgaged property, the guarantors would then be liable, their guaranty not being for the payment of money absolutely at or within a specified time, but ''on the terms and in the manner set out in said bond and mortgage,'' so that it was clearly the intention of the parties that they should exhaust not only the mortgage but pursue the bond, when the guarantors would be liable for any deficiency after the mortgage and bond were proven insufficient. In case of *Kearns* v. *Montgomery*, as stated by the Court at page 40, ''Whether the defendant is guarantor or maker, depends on the understanding of the parties. * * * * * * * if a stranger endorse his name in blank on the back of paper not negotiable, he is *prima facie* guarantor, but this presumption may be rebutted by showing the original understanding of the parties, by showing an express agreement otherwise, or by showing circumstances from which one may be inferred.'' Brandt on Suretyship, section 116, page 256, says: ''When the terms of a guaranty of payment fix the time within which the payment shall be made, if the payment is not made within the time prescribed there is a breach of the guaranty, and no steps need be taken against the princi-

pal, nor need his insolvency be shown in order to charge the guarantor."—And cases there cited. In *Tobacco Company* v. *Heid*, 62 Fed. Rep. 962, the court quotes with approval from Rand. Com. Paper, section 850, where it is said: "A guaranty may be absolute or conditional. One who guaranties payment becomes absolutely liable on any default of payment by his principal." In *Moore* v. *Holt*, 10 Grat. 284, it is said at page 294: "But as a guaranty is regarded as a mercantile instrument, it is not to be interpreted by any strict technical rules of construction, but by what may be fairly presumed to have been the intention and understanding of the parties." Citing *Douglas* v. *Reynolds*, 7 Pet. 113; *Bell* v. *Bruen*, 1 How. 169; *Lee* v. *Dick*, 10 Pet. 482. Stearn's Suretyship, section 61: "If the liability of the promisor is fixed by the mere default of the principal it is an absolute guaranty, but if the promisor's liability depends upon any other event than the non-performance of the principal it is a conditional guaranty. * * * * * * It is not necessary to first pursue and exhaust the principal before proceeding against the guarantor in cases where the guaranty is absolute." See also 25 Cent. Dig. 191, section 89.

It seems unnecessary to cite further authorities upon this proposition. That the defendant's guaranties in this case are absolute and unconditional, from the circumstances of the case and the authorities, is unquestionable. This being so, the instructions asked by the plaintiff and given by the court were properly given; and, because this is so and the instruction asked for by the defendant and refused by the court, being based upon the opposite theory that the guaranties were conditional and required the principal to be pursued to insolvency, the same was properly refused.

Bills of exceptions Nos. 1, 2 and 3 go to the rulings of the court in admitting certain testimony over the objection of the defendant. The first objection is an objection to the reading of the deposition of Arthur Coon taken in Chicago on the 5th day of April, 1905, first, because of the insufficiency of the notice and the service thereof. The notice seems to be very full as to when and where the same should be taken and ample time given, the notice was served by a deputy sheriff of Wirt county by delivering a copy of the same "into the hands of J. H. Bumgarner in Wirt County, W. Va., March 20th,

1905." It is further objected to because it is not properly certified. The objector points out no deficiency in the certification and it appears to be sufficient. A third general objection is "because the notice shows that the deposition taken under it shows that the same were to be read on behalf of the witness and not on behalf of the plaintiff." It is only necessary in reply to this objection to say that the notice shows no such thing, but says the depositions to be taken are "to be read in evidence in my behalf in the trial of a certain action at law now pending in the circuit court of Wirt county, State of West Virginia, in which action the undersigned is plaintiff and you are defendant." This notice was addressed to J. H. Bumgarner and signed by Loverin & Browne Co., plaintiff, by counsel. Upon the introduction and reading of the depositions of Arthur Coon at the trial we have a labyrinth of objections and exceptions being almost without number. The plaintiff undertook to prove by the witness, Arthur Coon, the written correspondence between the plaintiff and the defendant as well as that between the plaintiff and Harry Bumgarner concerning the shipment and delivery of goods and the receipt of orders for same, and enclosing bills of lading which were always made to plaintiff consignee, and either endorsed over to Harry Bumgarner to enable him to receive the goods shipped, or endorsed over to defendant to be by him endorsed over to Harry Bumgarner. Some of these exceptions are well taken because they fail to show with particularity the enclosing of letters in envelopes and stamping them and placing the same in the post office, but content themselves with such proof as the following as a sample: the witness testified that "On the 31st day of August, 1903, Loverin & Browne Company sent a letter to Harry Bumgarner enclosing a statement of his account showing a balance due to Loverin & Browne Company of $468.94 and asking him to remit" &c., without saying how the letter was sent, whether by mail, private messenger or otherwise, and then offer the letter press copies of such letters as secondary evidence, the original letters not being in possession of the plaintiff, or under its control. In most of such cases on such objections the letter itself was permitted to go in evidence and so much of the witness' testimony as related to the contents of the letter was stricken out. On the 25th day of November, 1904, the.

plaintiff caused to be served on the defendant a notice, dated October 24th, 1904, to produce on the trial of said action certain letters written to the defendant by the plaintiff in relation to the matters here in controversy, giving the dates thereof and notifying him that upon his failure to produce such letters it would offer secondary evidence of the contents thereof. On the 23rd of September, 1903, plaintiff wrote a letter to defendant notifying him of the balance due on account of Harry Bumgarner to that date $684.32, that there would be a credit on such balance of about $40, on account of goods returned as soon as they were in, and informing him that they had written Harry Bumgarner several times requesting him to keep his account paid up to date but he seemed to be getting behind, which was the reason of this notice, and asked defendant to take up the matter with him and have him settle the matter as soon as possible, as they could not have the matter run so long. October 6th, 1903, the plaintiff received from J. H. Bumgarner a letter requesting a statement of Harry Bumgarner's account, which letter witness stated was mislaid and plaintiff was unable to produce the same on trial, at any rate on the same day, October 6th, plaintiff wrote a letter to defendant replying to said request enclosing statement of Harry Bumgarner's account showing balance then due plaintiff of $890.37, called his attention to the fact that they had repeatedly requested Harry Bumgarner to settle this account but that he had kept putting it off from time to time and that the account ought to be all settled by that time "with the exception of the last shipment, which we presume has not yet been delivered." And informing him that a credit would go on the account of about $60 or $70 for merchandise that was not yet in, and asking him to take up the matter at once and arrange for an immediate settlement. On the 8th of October, 1903, plaintiff received a letter from J. H. Bumgarner, dated October 7th, in which he says, "I wrote you about a week ago for a statement of Harry Bumgarner a-c with you, as he is my son and I am on his bond I think it *justis* to me to have a full statement of all the Business he has *don*, the total amount of goods shipped to him & also the Commission he would be entitled to." On the same day, the 8th of October, plaintiff wrote defendant that it had mailed him statements on the 7th and presumed that he

had received them by that time, stating that the amount of shipments itemized in those statements was simply the net cost of the goods shipped and was the balance due the plaintiff, that it had nothing to do with the commission. Witness stated that on October 15th plaintiff wrote to defendant that it had received $300 from Harry Bumgarner since sending statement to J. H. Bumgarner, which had been credited to his account. On the same day, October 15th, J. H. Bumgarner wrote plaintiff enclosing freight bill of $2.25 for which he asked plaintiff to give his son Gay Bumgarner credit, and says, "I don't want my boys to owe anybody when it ought to be paid but they have sold a good many goods but it seems they come out behind at every shipment and I have to make up the deficiency." Then in a postscript he adds "Please let me know at once how Harry Bumgarner stands with his a-c. I sent him a check for $400 that he said he had fell behind and that he could square up with that amount." On the 19th day of October plaintiff received from defendant a letter dated October 17th, 1903, as follows:

"Elizabeth, W. Va., Oct. 17, 1903.   Loverin Browne Co. Dear Sirs:—I rec. your letter stating that Harry Bumgarner had sent $300 to be credited on his a-c, when I had sent him my check for $400, which was to be sent to you. It does seem to me that he either spends all the money he gets for goods or keeps it & if he is not reducing his a-c I don't want you to send him any more goods on my a-c so send me a statement of all the money he has ever sent you since he commenced business with you & in the mean time don't send him any more goods on my Bond *untill* you hear from me."

This letter is in answer to the letter of plaintiff informing him of the receipt of $300 from Harry Bumgarner. It will be seen that in the postscript of defendant's letter of October 15th he had mentioned sending a check to Harry Bumgarner for $400, when he finds that he had paid over to plaintiff only $300 of the $400 sent to him by the defendant he is inclined to not further guaranty payment for him. Witness stated that on the 20th of October, 1903, plaintiff wrote a letter to defendant in reply to his letter of October 15th enclosing the freight bill for $2.25 and his letter of October 17th countermanding his guaranty of Harry Bumgarner, which would take effect of that date and enclosing statement

of account showing balance due of $737.90, that a little shipment of $9.76 was made on that day before his countermand was received, that the bill of lading was mailed to Harry Bumgarner and charged to his account. This letter goes on to reply to defendant's letter in relation to the business of his sons when he says, "they have sold a good many goods but it seems as though they come out behind on every shipment and I have to make up the deficiency," and states that that was not any fault of the business they were in but as they learned on good authority it was the fault of the disbursement of the funds they received, and expressed a regret that his sons had not been careful about their habits; that they would be very sorry to close their business relation with defendant and his sons but would not advise that it be continued in the manner it was then done. On the 22nd of October plaintiff wrote to defendant that it had received a check from Harry Bumgarner for $313.76, which it had credited together with $20.40 on account of freight, also $32 for goods returned from Nelsonville, to the introduction of which last named letter no objection was made. On the 26th day of October plaintiff wrote to J. H. Bumgarner that it had received an order from Harry Bumgarner for delivery October 30th at Nelsonville, Ohio, amounting to $375, stating that it would ship the goods to its order and hold the bill of lading until it should hear from defendant, and ask whether it should send the bill of lading to Harry Bumgarner for the shipment and charge same under the guaranty given by defendant for his account and asking for a reply at once. In reply to this letter on the 30th of October, plaintiff received from defendant the following letter dated October 28th:

"Your letter of the 26th Rec. & in reply—Well you can let Harry Bumgarner have the goods shipped to Nelsonville, $375, on my bond and in the mean time urge him to send his collections as fast as he can. I want to do all I can for the boys, but don't want him to get *to* far behind, there is one thing about Harry, he is *thorley* honest, but he let a lot of his workers get away with him & has been reckless with his money, but has lots of business about him & any advice you will give him to hold him down will be highly *apreciated* by me."

Upon receipt of said letter plaintiff mailed the bill of lad-

ing and invoice to Harry Bumgarner at Nelsonville, Ohio. On the 6th day of November plaintiff wrote defendant enclosing to him bill of lading for shipment consigned to plaintiff at Buchtel, Ohio, amounting to $23.15, for Harry Bumgarner, informing him that M. C. Clarke was there and stated that it was his understanding and Harry Bumgarner's that defendant would stand good for future shipments to Harry Bumgarner but that plaintiff did not understand it that way as defendant only instructed it to turn over the Murray City shipment and the Nelsonville shipment which it had done, and asked whether he would stand good for future shipments to Harry Bumgarner up to the amount of his guaranty and ask for a definite reply so there would be no delay in mailing the bill of lading to Harry Bumgarner; and if it was his intention to stand good for future shipments to please endorse the enclosed bill of lading over to Harry Bumgarner and mail to him at Nelsonville so that he could get the goods and would charge to his account. Witness stated that on November 9th, plaintiff made a shipment to Harry Bumgarner to Glouster, Ohio, for $58.52, invoice of shipment mailed to Harry Bumgarner at Glouster and bill of lading was endorsed over to J. H. Bumgarner and mailed to him at Elizabeth, W. Va., and asking defendant to endorse the bill of lading over to Harry Bumgarner and mail to him at Glouster in case he wished to have the goods charged to him under his guaranty, and enquiring of him about the bill of lading mailed to him a few days before for the same purpose. By letter dated November 9th, 1903, to plaintiff, defendant acknowledged the receipt of this letter of November 6th and "in reply will say I want to — what is best to help Harry Bumgarner and am willing to stand on his bond for $800, which I think is best for all parties concerned and will mail him the bill of *laden* for $23.13 and you can let him have the goods. Please let me know how his a-c stands and oblige."

On the 13th of November plaintiff wrote defendant, among other things as follows: "We have your letter of Nov. 9th and note what you say about standing good for future shipments made to Harry Bumgarner to the amount of $800.00 and we will be governed accordingly. We enclose statement of his account to date, showing balance due $859.72. This will be reduced somewhat by goods returned. We have also

sent him statement, requesting him to arrange to settle without further delay, so that we can mail him bills of lading for future shipments.''

On November 12th, defendant wrote plaintiff: ''I just recd. a letter from Harry Bumgarner stating that Mr. Clarke would make the orders for goods in the future and he would work for him and that he would not want to ship any more goods on my bond until further orders.''    On the 14th of November plaintiff wrote defendant: ''We have your letter of November 12th, countermanding guaranty given for account of Harry Bumgarner, and we will not ship any more goods under your guarantee until further instructions from you. We wrote you yesterday, sending statement of balance due on his account, which we trust will be settled up as soon as possible.''    On the 10th of December, plaintiff wrote defendant: ''As guarantor for the account of Harry Bumgarner, we hand you herewith statement of his account to date, showing balance due $689.51.    This account has been running some time and as we do not see any prospects of getting it out of Harry Bumgarner we shall have to ask you to settle same. Kindly send us draft by return mail to balance, and oblige.''

This is the amount of plaintiff's claim as shown by its bill of particulars filed with its declaration which is an itemized statement of all the shipments made to Harry Bumgarner as well as all payments made by him during the whole time of their dealings, showing goods shipped in all to amount of $2,001.97 and credits to the amount of $1,312.46, leaving balance due plaintiff said sum of $689.51, which account was proved by the deposition of Arthur Coon, bookkeeper of plaintiff, as true and correct and showing the true balance unpaid.

A notice hereinbefore mentioned given by plaintiff to defendant to produce certain letters written by plaintiff to defendant named specifically letters dated Sept. 23rd, Oct. 6th, Oct. 8th, Oct. 15th, Oct. 20th, Oct. 22nd, Oct. 26th, Nov. 6th, Nov. 9th, Nov. 13th, Nov. 14th, Dec. 10th, and Dec. 30th, 1903, respectively.    The correspondence between plaintiff and defendant introduced in evidence with the deposition of Arthur Coon, shows the letters of defendant in reply to letters of plaintiff asking and receiving statements of account of his son, Harry Bumgarner, all the time acknowledging his

liability to plaintiff on his guaranties, usually calling it his bond, that he was on the bond for Harry. Carbon copies of these letters from plaintiff to defendant from its letter book became admissible as secondary evidence under the notice to defendant to produce the originals of such letters, taken together with replies thereto written by defendant which reply letters are admissible without proof of the hand writing. In 2 Whart. on Ev., sec. '1328, it is said a letter in answer to one written is presumed to be genuine. *Bank* v. *Geisthardt*, 75 N. W. 582: "The genuineness of a letter is sufficiently established to permit its introduction in evidence when it is shown that it was received in due and regular course of mail in response to a letter addressed to the supposed writer." In *Davis* v. *Robinson*, 67 Iowa 255, it is held: "Letters written with a typewriter and received by defendant through the mail and purporting to be answers to letters written by him to plaintiffs, were admissible in evidence against plaintiffs without further proof that they were written by them." And *Scofield* v. *Parlin*, 61 Fed. Rep. 804: "A letter received in due course of mail in response to a letter sent by the receiver is presumed, in the absence of any showing to the contrary, to be the letter of the person whose name is signed to it." 1 Greenleaf on Ev. 575 (c), and cases cited; 3 Wig. on Ev. p. 2893 (d); 1 Ell. on Ev. 107; *Cobbs* v. *Glenn Boom & Lumber Co.*, 49 S. E. 1005. In *Ovenston* v. *Wilson*, 2 Car. & Kir. 1, cited by 1 Greenleaf above, it is held that where a letter was written by the managing clerk of plaintiff's attorney to the defendant, a letter received in answer was admissible in evidence without proof of the defendant's handwriting; and it was also held that a letter proved to be received of an earlier date, in the same handwriting as the last mentioned letter, was likewise admissible; and also a copy of a letter written by the said clerk of plaintiff's attorney of a still earlier date, to which the last mentioned letter was an answer, was also given in evidence (the original not having been produced after a notice to produce) without any proof that the original had been put in the post, or had reached the defendant. *Boykin* v. *State*, 24 Sou. 141 (Fla.); *Plow Co.* v. *Munger*, 52 Kan. 371.

In defendant's letter of October 28th to plaintiff in reply to plaintiff's letter of two days before informing him that it

had an order from Harry Bumgarner for delivery of goods at Nelsonville, Ohio, amounting to $375, and that it would hold the bill of lading until it heard from defendant, he gave plaintiff explicit directions to ship them "on my bond and in the mean time urge him (Harry Bumgarner) to send his collections as fast as he can." Some two or three times defendant would temporarily suspend his guaranty, or his bond as he termed it, then would again authorize goods shipped to his son thereon.   Plaintiff would sometimes send the bills of lading endorsed by it to defendant and by him to be endorsed over to Harry Bumgarner in case the defendant was willing to stand liable on his guaranty to plaintiff for the shipments which were always made to plaintiff and could only be received by the holder of the bill of lading.   The last time defendant renewed his guaranty was on the 9th of November, 1903, in response to plaintiff's letter of November 6th as above stated.

Defendant J. H. Bumgarner was present in person at the trial and was placed upon the witness stand by plaintiff for the purpose of showing and did prove that his principal, Harry Bumgarner, had become insane and was an inmate of an hospital for the insane; and also for the purpose of accounting for papers supposed to be in his possession relating to this case which he obtained from Harry Bumgarner. He admitted to having a large bundle of papers in the courthouse at the term of court before that relating to the case but stated that he had turned them over to his attorney, Mr. Casto.   He gave no testimony in relation to the correspondence between either himself and the plaintiff or between Harry Bumgarner and plaintiff.   While the fact that defendant was present in person at the trial and did not as a witness for himself deny the authenticity of the letters purporting to be signed by him nor the fact that he had received the letters of the plaintiff put in evidence may not be conclusive of anything, it strengthens the presumption that the letters were received and sent by him as shown.   *Railroad Co.* v. *Roberts*, 10 Col. App. 87-91.   The defendant offered no evidence in the case.   In addition to the evidence of Arthur Coon, who proves the account of plaintiff, J. G. Clarke, a witness for plaintiff, testified that he was with Harry Bumgarner, saw the orders and helped to deliver the goods, went with him on

the wagon when he was delivering them, saw the invoices that were sent to him; that he was showing Harry how to take the goods out and they were put in piles and then taken and delivered to the customers, the different packages of goods with the orders on. Harry had several men working for him in selling and delivering the goods, orders were taken by all the men and the goods would all come together to Harry. Clarke says Harry got the goods, that he saw him get them and that he collected the money for them, says there might have been one order he did not see Harry get, he is not sure about that "But the other orders I was with him and helped him receive them and check them out and distribute them and deliver them and collect the money for them: that is, he did the collecting." J. W. Woodyard also testifies to Harry Bumgarner receiving quite a large delivery of goods, did not know how much; Howard Showalter also helped Harry make delivery of two lots of goods and Harry collected the money for them. Arthur Coon testifies to the actual delivery of the goods, all the shipments, to the common carrier and the presumption is that they were delivered in due course of business. I have said above that the exceptions of defendant to the ruling of the court in many instances in admitting certain letters of plaintiff to Harry Bumgarner and enclosures therewith, and Harry Bumgarner's letters to plaintiff over the objections of defendant were well taken because of insufficient proof of mailing and identification. While this is true they were immaterial errors not prejudicial to the defendant. If all such objections had been sustained and the evidence excluded, still the plaintiff had ample proof to sustain its action and to entitle it to its verdict. In *Railroad Co.* v. *Roberts*, 10 Col. App. 87, it is held: "The admission of incompetent evidence over objection should not reverse a case when it is clear such evidence could have worked no prejudice." And *Plow Co.* v. *Munger*, 52 Kan. 371, it is held : "Immaterial errors not prejudicial to the rights of the defeated party are no ground for a new trial."

During the trial the defendant demanded the production of the plaintiff's books of original entry and excepted to the ruling of the court in overruling his motion. The production of the books at the time they were so demanded would have

been a great inconvenience and could not have been done ex-·
cept at much delay in the trial, and they should have been
called for, if wanted, at the taking of the deposition of Ar-
thur Coon, the bookkeeper, which deposition was taken in
the City of Chicago where the plaintiff's place of business
was.    The account from the books made by said bookkeeper
and filed with the declaration and proved by him from entries
made in the due course of business was proved in the usual
way of proving accounts in *assumpsit* according to the uni-
versal practice in our courts and was sufficient.    *Vinal* v.
*Gilman*, 21 W. Va. 301.·  Counsel for defendant says plain-
tiff failed to show that notice was given to defendant of the
failure of his principal, Harry Bumgarner, to pay for the
goods purchased within a reasonable time after default.  It is
shown that statements were furnished him of the status of
his son's account time after time and several times at his re-
quest.   Counsel for defendant further claims that the decla-
ration was not good, but seems to forget that he failed to de-
mur to the declaration.   Section 3, chapter 134, Code, pro-
vides that no judgment shall be stayed or reversed for any
defect, imperfection or omission in the pleadings, which might
have been taken advantage of on a demurrer or answer but
was not so taken advantage of.   *Land and Improvement Co.*
v. *Karn*, 80 Va. 589.   Counsel for defendant says it was error
to admit in evidence the guaranties mentioned in the declara-
tion and excepted to the ruling of the court in refusing to
strike them out as evidence.   Section 40, chapter 125, Code,
says: "Where a declaration or other pleading alleges that any
person made, endorsed, assigned or accepted any writing, no
proof of the handwriting of such person shall be required,
unless the fact be denied by an affidavit with the plea which
puts it in issue."   *Dix* v. *Robinson*, 18 W. Va. 528; *Max-
well* v. *Burbridge*, 44 W. Va. 248, in which last case it is
held that unless the affidavit is filed denying such paper, it is
error to admit testimony attacking the genuineness thereof.

For the reasons stated there is no reversible error in the
judgment of the circuit court and the same is affirmed.

*Affirmed.* .